**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| *ex rel.* | ) |
| | ) |
| [UNDER SEAL] | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| [UNDER SEAL] | ) |
| | ) |
| Defendants. | ) |

**Case No.**_____
**FILED UNDER SEAL**
Pursuant to 31 U.S.C. § 3730
(False Claims Act)

*ECF Exempt*

**FILED UNDER SEAL**

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America, et al.<br>ex rel. Jason Gregory and Wilber Ayers | Novo Nordisk, Inc., et al. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Brian J. Markovitz<br>Joseph, Greenwald & Laake, P.A.<br>6404 Ivy Lane, Suite 400<br>Greenbelt, MD 20770          (301) 220-2200 | |

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ◯ 2 U.S. Government Defendant
- ◯ 3 Federal Question (U.S. Government Not a Party)
- ◯ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◯ 1 | ◯ 1 | Incorporated or Principal Place of Business in This State | ◯ 4 | ◯ 4 |
| Citizen of Another State | ◯ 2 | ◯ 2 | Incorporated and Principal Place of Business in Another State | ◯ 5 | ◯ 5 |
| Citizen or Subject of a Foreign Country | ◯ 3 | ◯ 3 | Foreign Nation | ◯ 6 | ◯ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

◯ **A.** *Antitrust*

☐ 410  Antitrust

◯ **B.** *Personal Injury/Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

◯ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

◯ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◯ **E.** *General Civil (Other)*          **OR**          ◯ **F.**  *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**Other Statutes**
☒ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| O  **G.**  *Habeas Corpus/ 2255* | O  **H.**  *Employment Discrimination* | O  **I.**  *FOIA/Privacy Act* | O  **J.**  *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus – General**<br>☐ **510 Motion/Vacate Sentence**<br>☐ **463 Habeas Corpus – Alien Detainee** | ☐ **442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)**<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions (if Privacy Act)**<br><br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loan (excluding veterans)** |
| O  **K.**  *Labor/ERISA (non-employment)* | O  **L.**  *Other Civil Rights (non-employment)* | O  **M.**  *Contract* | O  **N.**  *Three-Judge Court* |
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **740 Labor Railway Act**<br>☐ **751 Family and Medical Leave Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **440 Other Civil Rights**<br>☐ **445 Americans w/Disabilities – Employment**<br>☐ **446 Americans w/Disabilities – Other**<br>☐ **448 Education** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights – Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
False Claims Act, 31 U.S.C. §§ 3729 et seq.;

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |

DATE: 6/12/18     SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| and | Case No. _____ |
| ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSOURI, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, VIRGINIA, WASHINGTON, AND THE DISTRICT OF COLUMBIA | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** **TO BE FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730** **DO NOT ENTER INTO PACER** **DO NOT PLACE IN PRESS BOX** |
| ex rel. JASON GREGORY and WILBUR AYERS | |
| v. | |
| NOVO NORDISK, INC. 800 Scudders Mill Road Plainsboro, NJ 08536 | |
| SERVE: Resident Agent CT Corporation System 818 West Seventh Street, Suite 930 Los Angeles, CA 90017 | |
| SARAH MCLEISH 3701 Overland Ave Apt F147 Los Angeles CA 90034 | |
| TIM VANNAMAN 3900 Edgewood Court West Linn, Oregon 97068 | |
| 264b Jessie Lane Mountain View, CA 94041 | |
| GUSTAVO TORRES | |

2 Intriga Court
Rancho Mission Viejo, CA 92694


ILYA RACHMAN, MD
2216 Linnington Avenue
Los Angeles, CA 90064

10450 Wilshire Boulevard, Unit 8H
Los Angeles, CA 90024

ILYA RACHMAN M.D., INC.
2216 Linnington Avenue
Los Angeles, CA 90064

    SERVE: Resident Agent
    Ilya M. Rachman
    2216 Linnington Avenue
    Los Angeles, CA 90064

RACHMAN MEDICAL GROUP
7601 Canby Avenue, Suite 7
Reseda, CA 91335

MINAS KOCHUMIAN, MD
18251 Roscoe Boulevard, Suite 202
Northridge, CA 91325

18504 Marblehead Way
Tarzana, CA 91356

MINAS KOCHUMIAN MD, A MEDICAL
CORPORATION
18251 Roscoe Boulevard, Suite 202
Northridge, CA 91325

    SERVE: Resident Agent
    Regina Brown
    21440 Ventura Boulevard
    Woodland Hills, CA 91324

ADVANCED HEALTH MEDIA, LLC
420 Mountain Avenue
New Providence, NJ 07974

    SERVE: Resident Agent

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

FIVE STAR PHARMACY
15714 ½ Vanowen Street
Van Nuys, CA 91406

     SERVE: Resident Agent
     Ilya Kleinman
     15714 ½ Vanowen Street, Suite 101
     Van Nuys, CA 94106

FIVE STAR RX, INC.
16438 Vanowen Street, Suite 101
Van Nuys, CA 91406

     SERVE: Resident Agent
     Irina Sadovsky
     16438 Vanowen Street, Suite 101
     Van Nuys, CA 91406

     Defendants.

**COMPLAINT**

## INTRODUCTION

**1.**     Relators JASON GREGORY and WILBUR AYERS are informed and believes, and thereon allege the following Complaint against the Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM VANNAMAN; GUSTAVO TORRES; ILYA RACHMAN, MD; ILYA RACHMAN, MD, INC.; RACHMAN MEDICAL GROUP; MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD, A MEDICAL CORPORATION; ADVANCED HEALTH MEDIA, LLC; FIVE STAR PHARMACY; and FIVE STAR RX, INC.

**2.**     Defendant Novo Nordisk is a pharmaceutical company that produces, markets, sells, and distributes pharmaceutical and biological products in the areas of area of diabetes among others. Novo Nordisk manufactures, sells and promotes the prescription drug Victoza, in the United States, which generated $2.3 billion for the company in 2015, and $2.8 billion in 2016. Novo Nordisk also markets, sells, and distributes the diabetes drugs Levemir, Novolog, and Tresiba, and the weight loss drug Saxenda, among others.

**3.**     For several years now, Novo Nordisk has been running a fraud scheme that has five (5) components:

    a.   Employ and manage sales representatives to create quid pro quo arrangements with physicians, including but not limited to Defendant physicians Ilya Rachman, MD and Minas Kochumian, MD, to gain their trust to in order to illegally effectuate patient drug switches at local pharmacies;

    b.   Employ and manage sales representatives to create quid pro quo arrangements with local pharmacies, including but not limited to Defendant Five Star Pharmacy, to create trust in order to illegally effectuate patient drug switches;

    c.   Employ and manage sales representatives to obtain physician agreements from

physicians, including Defendant physicians, to switch their patients to Novo Nordisk drugs through compromised local pharmacies, including Defendant Five Star Pharmacy;

    d.   Utilize local pharmacies, including but not limited to Defendant Five Star Pharmacy, to effectuate the patient drug switches through massive violations of patient confidentiality including without limitation the following:

        i.   Novo Nordisk sales representatives taking lists of all of a physician's patients from the pharmacies and directing the pharmacies to effect the drug switches, and

       ii.   Novo Nordisk sales representatives feeding false data directly into the insurance/payor prior authorization system, and

      iii.   Novo Nordisk sales representatives directly writing prescriptions themselves in order to affect patient drug switches.

**4.**    Consistent with its scheme to effectuate illegal patient drug switches through local pharmacies, Novo Nordisk gave kickbacks to physicians for access to their patient lists and tacit approval to force pharmacy drug switches without physician orders, providing the physicians with speaking opportunities, lavish meals, and honoraria. Novo Nordisk encouraged the physicians' acceptance of the speaking fees as a form of quid pro quo for increased access to patient data and ability to effectuate these patient drug switches.

**5.**    The market share for many of Novo Nordisk's drugs is inherently limited, because they are approved for use only in patients with very narrow indications. To overcome these problems and gain a larger market for these drugs, Novo Nordisk created a plan to illegally market Victoza, Levemir, Novolog, Tresiba, and Saxenda, and Novo Nordisk's other drug products to

gain market share and formulary status in different territories.

6.      In order to increase sales of Victoza, Levemir, Novolog, Tresiba, and Saxenda, and Novo Nordisk's other drug products, Novo Nordisk illegally provided monetary and other incentives for physicians who were willing to allow access to patient lists and willing to allow patient drugs to be switched at local pharmacies without a physician's order. Novo Nordisk management, including but not limited to Defendant Novo Nordisk managers Sarah McLeish, Tim Vannaman, and Gustavo Torres, trained and instructed sales representatives, business and marketing managers, and other executives to offer physicians expensive meals, speaking honoraria, and clinical research study fees as kickbacks in exchange for the physicians' agreement to effectuate local pharmacy drug switches to Victoza, Levemir, Novolog, Tresiba, Saxenda, and Novo Nordisk's other drug products.

7.      Novo Nordisk management, including but not limited to Defendant Novo Nordisk managers Sarah McLeish, Tim Vannaman, and Gustavo Torres, instructed sales representatives to violate HIPAA regulations by taking over the prior authorization process, and in some cases sales representatives wrote prescriptions directly for patients, and routinely accessed patient data through friends at pharmacies in order to switch some or all of a physician's patients to Novo Nordisk drugs. Sales representatives accessed patient data for Victoza, Levemir, Novolog, Tresiba, and Saxenda in order to pass false information to insurance payors and have the prescription approved, circumventing the "prior authorization process." Sales representatives subsequently brought catered lunches and other perks to pharmacy staffs in order to get access to all their patient data for specific targeted physicians, and to help with switching those physician's patients to Novo Nordisk drugs. Ultimately, the Defendant's scheme went as far as having some sales representatives illegally write out prescriptions for patients in violation of laws against

prescribing by non-physicians.

**8.**     Had the United States and the several States known that Novo Nordisk caused procurement of Victoza, Levemir, Novolog, Tresiba, Saxenda, and Novo Nordisk's other drug products through illegal drug switching at local pharmacies, they would not have provided reimbursement for such prescriptions.  This course of conduct violates the False Claims Act, 31 U.S.C. §§ 3729 et seq. and equivalent state statutes.

**9.**     Federal laws and regulations governing Medicaid and Medicare and similar state statutes prohibit pharmaceutical manufacturers from providing kickbacks to physicians and medical care providers. Specifically, the federal healthcare program anti-kickback provision, 42 U.S.C. § 1320a-7b(b) (2)(B), provides:

> [W]hoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

**10.**     The Medicare and Medicaid anti-kickback laws, 42 U.S.C. 1320a-7b(b), et seq., regulate drug and device marketing in order to prevent over-utilization of medical care, medication, and medical drugs. Under the anti-kickback laws, companies may not offer or pay any remuneration, in cash or kind, to induce physicians or others to order or recommend drugs or devices which may be paid for by a federal healthcare program such as Medicare or Medicaid. These regulations not only prohibit outright bribes and rebate schemes, but prohibit any payment, remuneration, gratuities, and other benefits paid by a company to a physician which has as one of its purposes inducing the physician to use the company's products.

**11.**     In addition to the anti-kickback laws, §1877 of the Social Security Act, often referred to

as the "Stark law," provides that a physician cannot (1) refer patients to an entity (2) for the furnishing of DHS (designated health services) (3) if there is a direct or indirect financial relationship between the referring physician (or an immediate family member of the referring physician) and the entity, (4) unless the financial relationship fits within one of the specific exceptions in the statute or regulations. See 42 U.S.C. §1395nn. Unlike the Medicare Anti-Kickback Statute, which is a criminal statute requiring at least some measure of criminal intent, the Stark Statute is a civil statute requiring strict compliance. Intent to violate or substantial compliance has no bearing on whether an activity is or is not legal. Violation, no matter how unintentional or technical, is sufficient to invoke the Stark Statute (herein, "Stark violations"). Lastly, if a prohibited referral occurs under Stark, the DHS entity may not file or cause to be filed a claim under Medicare or Medicaid or a bill to any individual, third party payer, or other entity for the designated health services provided.

12.      Had the United States and the several States known that Victoza, Levemir, Novolog, Tresiba, Saxenda, and Novo Nordisk's other drug products were being switched at local pharmacies because physicians in those facilities had accepted kickbacks from Novo Nordisk, the United States and the several States would not have funded these illegal kickbacks after the fact by providing reimbursement for Novo Nordisk's drugs.

13.      Moreover, the kickbacks described in this Complaint are strictly illegal and have had the direct effect of greatly increasing the amount of Victoza, Levemir, Novolog, Tresiba, Saxenda, and Novo Nordisk's other drug products that have been paid for and reimbursed by state and federal governments. Accordingly, the kickbacks have had the indirect effect of increasing the amount of money spent by the federal government and the States for payments and reimbursements covered by Medicaid, Medicare, and the Tricare health care system for members

8

of the military and their families. Novo Nordisk's kickbacks to physicians represent the inducement of payment from the government through a pattern of fraudulent conduct, constituting false claims within the meaning of 31 U.S.C. § 3729 and the relevant provisions of the state false claims and Medicaid fraud statutes. When Relators complained about and reported these practices and other illegal and fraudulent practices to Novo Nordisk, the Defendant retaliated against Relators.

14.     Relators also allege violations by Novo Nordisk of the California Insurance Frauds Prevention Act ("CIFPA"), Cal. Ins. Code § 1871, et seq.; and the Illinois Insurance Claims Fraud Prevention Act ("ILCFPA"), 740 Ill. Comp. Stat. § 92/1, et seq.

15.     Both California and Illinois have qui tam statutes that permit relators to raise allegations of fraud by individuals or entities against private insurance companies. The statutes operate similarly to the federal and state FCAs, and are written to prevent fraud occurring in the private health care insurance market.

16.     Novo Nordisk receives significant revenues from private insurers in California and Illinois.

17.     Novo Nordisk is paid by private insurers that cover California- and Illinois-based patients who have been referred for treatment as a result of Novo Nordisk's scheme. Private healthcare insurance companies in California and Illinois require the same conditions of payment and prohibitions kickbacks and illegal drug switching schemes found in the Medicare and Medicaid programs.

18.     Section 1871.7(a) of the CIFPA, Cal. Ins. Code 1871.7(a) prohibits as unlawful the following:

9

...It is unlawful to knowingly employ runners, cappers, steerers, or other persons...to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer.

19.     The Defendant's kickback scheme also violates Section 1871.7(a) of the CIFPA, Cal. Ins. Code 1871.7(a), and Section 92/5(a) of the ILCFPA 740 Ill. Comp. Stat. § 92/5(a). Defendant Novo Nordisk has entered into illegal arrangements with physicians that provide financial incentives for the use of their drug prescribing services, resulting in inappropriate claims submitted to private insurers.

20.     Ca. Ins. Code § 1871.7(a). Any person or entity found in violation of this section or specifically identified corollary criminal code sections is subject to civil penalties ranging from $5,000.00 to $10,000.00 per false claim plus three times the amount of each false claim for compensation from an insurer. Cal. Ins. Code § 1871.7(b).

21.     Under the CIFPA, any interested person may bring a sealed civil action for a violation of Section 187.7 on behalf of the State of California, Ca, Ins. Code § 1871.7(e)(1), (2). If the Relators are ultimately successful and the District Attorney intervenes in the lawsuit, the Relators are entitled to the recovery of fees, expenses, and a relator's share of between 30% and 40% according to the priority specified in the statute. Cal. Ins. Code § 1871.7(g)(1)(A)(iii)(I), (IV). If neither the District Attorney nor the Insurance Commissioner intervene and the Relators are successful in settling his/her lawsuit or attaining final judgment, the Relators may receive between 40% and 50% of the proceeds plus costs and expenses. Cal. Ins. Code § 1871.7(g)(2)(A).

22.     The Illinois Insurance Claims Fraud Prevention Act ("ILCFPA") is similar to the CIFPA. In Section 92/5(a), the ILCFPA prohibits kickbacks and states:

... [I]t is unlawful to knowingly offer or pay any remuneration directly or indirectly, in case or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis

for a claim against an insured person or the person's insurer.

**23.**     740 Ill. Comp. Stat. § 92/5(a). If a defendant is in violation of Section 92/5(a) or specifically identified corollary criminal code sections, he/she must reimburse three times the amount of money defrauded as well as civil penalties ranging from $5,000.00 to $10,000,00 per fraudulent claim. 740 Ill, Comp. Stat. § 92/5(b).

**24.**     Pursuant to Section 15 of the ILCFPA Section 15, an interested person may bring a sealed civil action for a violation of the ILCFPA on behalf of him/herself and the State of Illinois. 740 Ill. Comp. Stat. § 92/15(a), (b). If the State's Attorney and/or the Attorney General intervene in the qui tam action, and it is ultimately successful, the Relators are entitled to at least 30% of the recovery. 740 Ill, Comp. State § 92/25(a). If neither government entity intervenes and the Relators successfully pursues the lawsuit on their own, the Relators are entitled to recover not less than 40% of the proceeds. 740 Ill. Comp. Stat. § 92/25(b).

**25.**     Relators here are the original sources of the allegations under the CIFPA and ILCFPA.

## JURISDICTION AND VENUE

**26.**     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 and supplemental jurisdiction over the counts related to the State False Claims Acts and other applicable state laws pursuant to 28 U.S.C. § 1367.

**27.**     This Court has personal jurisdiction over the Defendants and subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) because some Defendants transact the business that is the subject matter of this lawsuit in the District of Columbia and numerous acts proscribed by 31 U.S.C. § 3729 occurred in the District of Columbia.

**28.**     Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because the acts proscribed by 31 U.S.C. §§ 3729 et seq. and corresponding state statutes and

11

complained of herein occurred in this District, and some of the Defendants transacted business in this District.

**PARTIES**

29.     Relator Jason Gregory ("Gregory") began working as a drug sales representative for Novo Nordisk in or about January 2014, working in the geographical area of Woodland Hills, California. Relator Gregory left the company in November 2017, and now works as a sales representative for another healthcare company. He resides at 2785 Wanda Avenue, Simi Valley, CA 93065.

30.     Relator Wilbur Ayers ("Ayers") first began working as a drug sales representative for Novo Nordisk on or about February 10, 2014, working also in the geographical area of Woodland Hills, California. Relator Ayers left the company in April 2017, and now works as a drug sales representative for another pharmaceutical company. He resides at 22756 Criswell Street, West Hills, CA 91307.

31.     Both Relators promoted and sold multiple prescription drugs for Novo Nordisk, including those contained in this disclosure.

32.     Relators are both citizens of the United States. Relators have been employed by Novo Nordisk and have inside knowledge regarding Novo Nordisk's business related to pharmaceutical products.

33.     The Relators became aware of the Defendant's false claim scheme alleged herein due to their positions. The Relators commenced this qui tam action against the Defendants for the pharmaceutical products at issue based upon Relators' personal experiences and industry insider information. Relators, as employees of Novo Nordisk, had access to pricing, marketing and reimbursement information such as proprietary Novo Nordisk's computer files revealing the

marketing schemes, prices, and volume of sales by Novo Nordisk. Relators, as industry insiders, discovered huge profit spreads on the drugs at issue and that the drugs at issue were reimbursed by Medicare and Medicaid as a result of illegal pharmacy switching schemes. Relators directly witnessed and observed the Defendant Novo Nordisk's sale and introduction of the drugs into the stream of commerce. Relators were aware that Medicare and Medicaid intended to reimburse Defendant Novo Nordisk for drugs based on a belief that the drugs were legitimately marketed and that the drugs were not encumbered by illegal Novo Nordisk pharmacy switching schemes at the Government's expense.

**34.**    Defendant Novo Nordisk Inc. ("Novo Nordisk") is a Delaware corporation with its principal place of business at 800 Scudders Mill Road, Plainsboro, NJ 08536.

**35.**    Defendant Sarah McLeish is a District Business Manager at Novo Nordisk for a sales territory in Southern California. On information and belief, she has been in this position since 2007. On information and belief, she resides at 3701 Overland Avenue, Apartment 147, Los Angeles, California 90034.

**36.**    Defendant Tim Vannaman is a Regional Business Director at Novo Nordisk for a sales territory that covers some Western states. On information and belief, he has been in this position since 2012. On information and belief, he resides at 3900 Edgewood Court, West Linn, Oregon 97068.

**37.**    Defendant Gustavo Torres is a former Senior Regional Business Director at Novo Nordisk for a sales territory that included parts of Southern California. On information and belief, he was in that position from 2006 through 2014, and he resides at 2 Intriga Court, Ladera Ranch, California 92694.

**38.**    Defendant Ilya Rachman, MD is a physician in Southern California. On information and

13

belief, he is a partner in the Rachman Medical Group, with a principal place of business at 7601 Canby Avenue, Suite 7, Reseda, California 91335. His medical practice is incorporated as Ilya Rachman, MD, Inc., of which he is the CEO and is his own agent for service of process at 2216 Linnington Avenue, Los Angeles, California 90064 (collectively, "Dr. Ilya Rachman" or "Dr. Rachman").

**39.**     Defendant Minas Kochumian MD is a physician in Southern California. On information and belief, he has a clinical practice at 18251 Roscoe Boulevard, Suite 202, Northridge, California 91325. His medical practice is incorporated as Minas Kochumian MD, a Medical Corporation, of which he is the President, and for which the registered agent for service of process is Regina Brown, 21440 Ventura Boulevard, Woodland Hills, California 91324 (collectively, "Dr. Minas Kochumian" or "Dr. Kochumian").

**40.**     Defendant Advanced Health Media LLC ("AHM") is a Delaware corporation, having its principal place of business at 420 Mountain Avenue, New Providence, New Jersey 07974. The registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

**41.**     Defendant Five Star Pharmacy is a pharmacy located at 16438 Vanowen Street, Suite 101, Van Nuys, California 91406. The pharmacy is incorporated as Five Star Rx Inc., for which the CEO and registered agent for service of process is Irina Sadovsky, 16438 Vanowen Street #101, Van Nuys, California 91406 (collectively, "Five Star Pharmacy").

## UNAUTHORIZED PRESCRIBING, SWITCHING PRESCRIPTIONS, AND PRIOR AUTHORIZATION PULL-THROUGH

**42.**     Novo Nordisk sales representatives were encouraged to take over the prior authorization process, and in some cases even to write prescriptions directly for patients, and routinely

14

accessed patient data through friends at pharmacies in order to switch some or all of a

physician's patients to Novo Nordisk drugs. Sales representatives accessed patient data for

Victoza, Levemir, Novolog, Tresiba, and Saxenda in order to pass false information to insurance

payors and have the prescription approved. Sales representatives then brought catered lunches

and other perks to pharmacy staffs in order to get access to all their patient data for specific

targeted physicians, and to help with switching those physician's patients to Novo Nordisk

drugs. Ultimately, the scheme went as far as having directing Novo Nordisk sales representatives

to illegally write out prescriptions for patients.

**43.**    Novo Nordisk sales representative involvement in the prior authorization process

endangered the patients' HIPPA rights and was designed to bypass the existing formulary

process to gain the prescription.

**44.**    Novo Nordisk sales managers instructed the drug sales representatives to sell physicians'

offices on the following special benefit: Novo Nordisk would set up computerized systems for

physician's offices and pharmacies to help the office staff to get its drug payments approved

through insurance company prior authorization programs. This was a very valuable and illegal

benefit to both the physicians and pharmacy offices because physicians' office staff often do not

have enough employees to undertake the extra hours of work required to receive prior

authorization for drug reimbursement from a payor.

**45.**    Consequently, Novo Nordisk also turned the computerized prior authorization aids into a

very valuable benefit for the company itself. Here, Novo Nordisk sales representatives set up the

prior authorization computer systems with a user name and password for the physicians to log in

with to enter information about the case and submit it for reimbursement approval from the

insurance payors. However, as instructed by their sales managers, many of the sales

representatives kept the log-in and password information for the physicians and provided fake

prior authorization information for patients in lieu of the physician submitting accurate

information themselves. This was a way to get false claims paid for the Novo Nordisk drugs by

Medicaid, Medicare Part D, and other payors.

46.    Novo Nordisk sales representatives would set up computer programs such as

"CoverMyMeds," the "PARX" program and the "PASS" system to get physicians' offices linked

with pharmacies to get prior authorizations done faster and easier for medications like Victoza

and Novolog that have difficulty with coverage on certain plans. This would mean asking who is

doing the prior authorizations ("PA's") in the physician's office, who gets calls from the

pharmacy, who gets calls to re-fill prescriptions, what whether Novo Nordisk drugs like Tresiba,

Victoza, Levemir, Saxenda, or other Novo Nordisk drugs were in the system. The sales

representatives were instructed by Novo Nordisk managers to bring frequent perks to the

physicians such as breakfast, office lunches, and expensive dinners, and then ask the physician if

he is willing to have his office staff run queries to help with "quality measures." Novo Nordisk

sales representatives were then instructed to push the physician or pharmacy to switch all of that

physician's patients in nursing homes, skilled nursing facilities, and other patient types to Novo

Nordisk drugs. Sales representatives were instructed to "Hold him [physician] accountable, you

deserve to do so."

47.    Relator Ayers found that Defendant Novo Nordisk sales manager Sarah McLeish was

driving her Beverly Hills sales district to be number one in the nation in Victoza sales through

illegal use of the PASS system. Some sales representatives under McLeish's control were setting

up the PASS system at doctors' offices to help them get Victoza prescriptions through prior

authorization with insurance companies. These sales representatives were then setting up a

password for the doctors' office staff to interact with the insurance companies and submit prior authorization information, but also keeping a password for themselves and logging in remotely to push through the prescriptions in their own district, thereby increasing the commissions for themselves and for Defendant McLeish. Relator Ayers informed the Novo Nordisk Compliance Department of this issue in the fall of 2016, and Relator Gregory also informed the Compliance Department of the issue in the fall of 2016, and both were retaliated against by McLeish and the company for reporting the illegal acts.

48.     The scheme of Novo Nordisk sales representatives submitting false prior authorization information for false claims to get approved was widespread, and accepted by some physician's offices as an aid in getting prescriptions pushed through. Relators identified the practice right away as illegal and unethical and did not participate in it themselves. However, the actions of Defendant Sarah McLeish and others to push the falsification of prior authorization brought the problem to their attention in the field. For instance, Relators were informed that a high-prescribing customer, Dr. Jasmin Javaherian, directly asked a Novo Nordisk sales representative from Santa Clarita if his sales team would be taking care of all the prior authorization submissions for her office in a similar manner to how a group of Novo Nordisk sales representatives had done for her Beverly Hills office. Dr. Javaherian was the fourth highest insulin prescriber and second highest Medicaid prescriber of insulin in the region, among approximately 5,855 physicians, with more than half her prescriptions going to Medicaid patients (Exhibit 1). Dr. Javaherian's prescribing volume is unusual because she is not an endocrinologist, and endocrinologists are the physicians who normally are able to get the largest number of insulin prescriptions approved. Defendant Sarah McLeish was the Novo Nordisk sales manager over Beverly Hills and appeared to be instructing sales representatives to

17

inappropriately submit prior authorization information to insurance companies on behalf of this physician in order to drive up her prescription volume.

**49.**     In one business plan, to comply with management instructions to push prior authorizations, relator Ayers wrote that he had to "Learn how I can help Jodie [Dr. Lawrence Hwang's office staff] get more of our scripts through tough managed care plans. Teach Jodie the PASS system and follow up with Dr. Hwang after." (Exhibit 2).

**50.**     Relators were also aware that other Novo Nordisk sales representatives were instructed to keep the physicians' log-in information to log themselves into the prior authorization computerized systems, and pass through the false claims themselves. Relators were aware of other sales representatives following Novo Nordisk management direction and executing this task.

**51.**     In early February, 2016, Relators' district sales manager Defendant Sarah McLeish, instructed them to work with another Novo Nordisk sales representative named Megan Wilson who had identified a pharmacy that Defendant Dr. Minas Kochumian (one of their territory's top prescribers) was sending most of his patients to get their prescriptions filled. This pharmacy turned out to be Healthy Way Pharmacy in Reseda, California.

**52.**     Relators were instructed to bring lunches and other benefits to the staff at Defendant Five Star Pharmacy and other pharmacies in their territory to keep the pharmacy switching competitor drugs for them without physician or patient approval in order to increase Defendant's market share.

**53.**     Novo Nordisk district sales manager Defendant Sarah McLeish also instructed Relators to work on other physicians to get their patient drugs switched through pharmacies, such as on March 24, 2016 when she told them to focus on high prescriber Defendant Dr. Ilya Rachman,

because she "knows which pharmacy he is sending most of his patients to."

54.    On March 28, 2016, Relators were instructed to focus specifically on Defendant Five Star Pharmacy in Van Nuys, California because Five Star Pharmacy was the pharmacy that most of Defendant Dr. Rachman's patients went to for filling their prescriptions. Likewise, Relators were also instructed to focus on Healthy Way Pharmacy in Reseda, California, because they were the pharmacy that Defendant Dr. Kochumian's patients went to for filling their prescriptions. Relators were to bring lunches to those pharmacies and use their relationships for prescription pull-through and to execute illegal prescription switches without specific approval from the physician or the patient in order to increase Defendant's market share.

55.    While at these pharmacies, the Relators were instructed to handle HIPAA-protected patient information. Pharmacy staff would hand the Novo Nordisk sales representatives lists of patients who were seeing the physicians in their territory, and the sales representatives would circle the names of patients who they wanted to see switched to the Novo Nordisk drug. In effect, Novo Nordisk was completely bypassing the patient-physician relationship, and directing and managing its sales representatives to create their own prescriptions without a medical license.

56.    Novo Nordisk sales representatives were instructed to consistently funnel gifts such as lunches and treats to these pharmacies to increase their incentive compensation and the Defendant's market share.

57.    For example, on April 13, 2016, Relator Gregory was instructed to bring Jamba Juice when he visited the Hye Pharmacy in Van Nuys, California. Novo Nordisk sales representative Megan Wilson had discovered that Hye Pharmacy handled patients for targeted physicians Dr. Vagharshak Pilossyan, Dr. Nabil Feghali, and physician's assistant Jennifer Minassian. On the

same day at Defendant Five Star Pharmacy, Relator Gregory was instructed to consistently bring "coffee, Jamba Juice, pastries, etc.," and that they will "love anything I can bring them."

**58.**     For example, on May 3, 2016, because Novo Nordisk sales representative Megan Wilson was "basically out of budget already," she asked Relator Gregory to buy lunch for Defendant Five Star Pharmacy with her the next day. While at Defendant Five Star Pharmacy, Relator Gregory observed Ms. Wilson instructing a pharmacy technician to print her a patient list so that she could highlight the names of patients whom she needed to have their prescriptions switched to Novo Nordisk drugs, which would increase Defendant Novo Nordisk's market share.

**59.**     For example, on August 2, 2016, Relator Gregory was instructed to bring lunch from an Italian restaurant to Defendant Five Star Pharmacy to continue the Novo Nordisk scheme of having the pharmacy switch competitor prescriptions to Novo Nordisk prescriptions. While there, Relator Gregory observed Novo Nordisk sales representative Charlene Negari request a patient list from the pharmacy staff in order to switch patients to the Novo Nordisk drug Tresiba. Ms. Negari then instructed Relator Gregory to mark up the list for any physicians in relator's territory, which included Dr. Christopher Buttelman and Defendant Dr. Rachman. Relator Gregory refused, but Ms. Negari told Relator Gregory that pharmacy technician Miguel was helping her out to get patients, who were on competitor insulins Humalog, Humulin, or Humalog 75/25, switched to Novo Nordisk's form of insulin, Novolog. Ms. Negari further explained that one of relator's targeted physicians, Dr. John Storch, owns a nursing facility, and most of his patients on insulin use the nursing facility's services. Ms. Negari told the Relator Gregory that Dr. Storch is not concerned about which insulin his patients are taking. Ms. Negari said that she and Megan Wilson found out that this physician has his facility's insulin prescriptions filled by Defendant Five Star Pharmacy and that it is why they have been working with the pharmacy.

Some examples of lunches for the pharmacies include but are not limited to the following:

- July 5, 2016 lunch for Five Star Pharmacy – "They want a Persian restaurant called Shiraz"

- June 18, 2015 lunch for DeSoto Pharmacy

- July 10, 2015 lunch for DeSoto Pharmacy

- November 1, 2016 lunch for Five Star Pharmacy

- March 2, 2015 lunch for Rite Aid Pharmacy - "11ppl. Berta follow up. Casablanca"

- February 10, 2016 lunch for DeSoto Pharmacy

- March 16, 2015, lunch for Northridge Plaza Pharmacy - "8-10ppl"

- April 14, 2016, lunch for Desoto Pharmacy - "stonefire 12ppl"

- February 24, 2015, lunch for Reliable Pharmacy - "15 people"

- May 5, 2016, lunch for True Care Pharmacy

- July 7, 2016, lunch for Hye Pharmacy

- November 3, 2016, lunch for Five Star Pharmacy

- October 21, 2014, lunch for CVS Pharmacy Thousand Oaks

- October 4, 2016, lunch for Five Star Pharmacy

- October 27, 2016, lunch for Thousand Oaks CVS Pharmacy - "Call to ask pharmacist Melody [a pharmacist at the Thousand Oaks, CA CVS pharmacy] what they'd like.  Said Toppers [a local pizza restaurant in Thousand Oaks, CA] is good if they are busy and can't give an answer over the phone right away. 5 people but changes frequently so ask."

The above luncheons and other actions were also Stark violations as explained below (Exhibit 3).

**60.**     This pattern of illegal instructions and illegal patient switching continued, and Relators

21

complained to Novo Nordisk's Compliance department that the company's sales managers and sales representatives were engineering illegal patient drug switches at the local pharmacies, but Novo Nordisk's internal compliance investigations instead resulted in Relators being retaliated against. Relators were forced onto performance improvement plans and as detailed below were financially damaged by the retaliatory actions of Defendants Sarah McLeish, Tim Vannaman, and Novo Nordisk against each Relator.

## KICKBACKS TO PHYSICIANS TO EFFECTUATE DRUG SWITCHES

61.     Novo Nordisk used illegal kickbacks and quid pro quo arrangements to ensure that physicians would continue to prescribe Novo Nordisk's drugs. None of these incentives have anything to do with true scientific or medical research or with the safety of patients. These incentives include numerous catered meals, lavish dinners, honoraria payments for speakers as well as the other activities described herein.

62.     Sales representatives have been required by Novo Nordisk managers to bring a very large number of catered lunches to physicians' offices. They are given budgets that they are required to spend on lunches, and have provided as many as two (2) per day, and brought as many as ten (10) meals per week between breakfasts with coffee and lunches.

63.     While these lunches are ostensibly for an "educational" purpose to fall within anti-kickback safe harbors, the sales representatives are expected to cater birthday parties and holiday parties for physician' offices, and often do not get the opportunity to give a sales message to physician who have to eat and run at the office. To call the meals "educational" in nature is untrue in nearly all cases as no educational information was provided to the physician's office staff or the physicians themselves.

64.     Physicians are catered to on a frequent basis, with some physicians' offices being catered

22

lunch by Novo Nordisk sales representatives several times a month, depending on their prescribing volume. The catered lunches are quid pro quo by nature in that the majority of the lunches are catered to the offices of high prescribers and are based on an ability to switch more patients to Novo Nordisk drugs.

65.     For example, Novo Nordisk scheduled an office lunch for Dr. Treise Chestnut's birthday on February 23, 2015 located at 1000 Newbury Rd, Thousand Oaks, California 91320. The list of food to bring included Godiva chocolates and surprise coffee.

66.     For example, Novo Nordisk scheduled an office lunch for Dr. Mehran Okhovat's birthday on February 7, 2015 located at 18350 Roscoe Blvd, Northridge, California 91325. Lunch was to include food for thirty (30) people.

67.     For example, Novo Nordisk scheduled an office lunch for Dr. Susan Hopkins' birthday on December 17, 2014 located at 18433 Roscoe Blvd, Northridge, California 91235.

68.     Novo Nordisk scheduled an office lunch for the birthdays of Dr. Anita Srinivasa and Dr. Beverley Kornder on December 17, 2014 located at 425 Haaland Drive, Thousand Oaks, California 91361.

69.     The above birthday luncheons and other actions were also Stark violations as explained below (Exhibit 4).

70.     Some physicians received lunches repeatedly in such a manner as to leave no doubt that the purpose was purely to induce selling.

71.     For example, Relators were scheduled to cater lunches to Dr. Mehran Okhovat on twenty (20) different occasions since March 2014, despite the fact that other Novo Nordisk sales representatives were also catering lunches to that office during the same time period. Notes on the lunches indicated that between twelve (12) and thirty (30) people were to be fed by Novo

Nordisk each trip, in order to get prescriptions from Dr. Okhovat. Novo Nordisk considered Dr. Okhovat to be a top-ranked, "gold" rated physician based on his prescription volume and their ability to make money off his patients, and therefore required the Relators to frequently bring him perks such as lunches (Exhibit 5). Some examples of lunches for Dr. Okhovat include but are not limited to the following:

- March 21, 2014
- May 7, 2014
- June 4, 2014
- June 19, 2014
- September 11, 2014
- October 17, 2014
- December 18, 2014
- February 9, 2015  – "Dr. Okhovat's Birthday Lunch (Sunday was his birthday). 30 People. In n Out. Okhovat loves hamburger (can't eat cheese) with everything on it. Get a variety of hamburgers and cheeseburgers with onions and no onions. Fries. Pick up assorted can drinks and waters at grocery store."
- February 19, 2015  – for "25-30 ppl"
- April 15, 2015
- May 28, 2015
- July 24, 2015
- February 24, 2016
- March 18, 2016
- September 14, 2016

- November 4, 2016

- December 2, 2016

- January 13, 2017

The above luncheons and other actions were also Stark violations as explained below (Exhibit 6).

**72.**     Relators were scheduled to cater to lunches to the office of Defendant Dr. Minas Kochumian in Northridge, California on thirteen (13) different occasions since June 2014, despite the fact that other Novo Nordisk sales representatives were also catering lunches to that office during the same time period. Relators were instructed to target Defendant Dr. Kochumian with perks such as lunches and coffee services, because the company considered Dr. Kochumian their number one (#1) ranked target in the area, and gave him a "gold" rating based on his prescription volume. These actions were Stark violations as explained below (Exhibit 7).

**73.**     Novo Nordisk hoped to use the lunches as a quid pro quo arrangement for more prescriptions from Defendant Dr. Kochumian, and for getting him to allow their sales representatives to pull his patient lists at area pharmacies and switch them to Novo Nordisk drugs. As follow up and pull-through, Novo Nordisk also required that Relators and other sales representatives take lunches to the pharmacies most frequently used by Defendant Dr. Kochumian (Exhibit 8). In this way, the company's scheme to have sales representatives directly pull patient names from pharmacies for their top prescribers and switch them to Novo Nordisk products could be better implemented. Some examples of lunches for Defendant Dr. Kochumian include but are not limited to the following:

- June 5, 2014

- October 24, 2014

- March 9, 2015

- April 17, 2015

- July 21, 2015

- October 13, 2015

- January 25, 2016

- April 18, 2016

- June 10, 2016

- June 21, 2016

- January 10, 2017

- January 16, 2017

- April 10, 2017

The above luncheons and other actions were also Stark violations as explained below (Exhibit 9).

**74.**    Relators were scheduled to cater to lunches to the office of Dr. Boris Vaisman in Woodland Hills, California on thirteen (13) different occasions since March 2014, despite the fact that other Novo Nordisk sales representatives were also catering lunches to that office during the same time period. Relators were instructed by Novo Nordisk sales managers, including Defendants Sarah McLeish, Tim Vannaman and Gus Torres, to target Dr. Vaisman with perks such as lunches and coffee services, because the company considered him their number three (#3) ranked target in the area and gave him a "gold" rating based on the large number of prescriptions that could be switched through local pharmacies to Novo Nordisk drugs (Exhibit 10). Novo Nordisk hoped to use the lunches as quid pro quo for more prescriptions from Dr. Vaisman, and for getting him to allow their sales representatives to pull his patient lists at area

26

pharmacies and switch them to Novo Nordisk drugs. Some examples of lunches for Dr. Vaisman include but are not limited to the following:

- April 29, 2014 – "Lunch with the Vaisman's in office at 12:30 for 15 people call prior to appointment find out who they'd like lunch from"
- June 10, 2014
- July 11, 2014 – "15 people Call the day before to confirm lunch and who they want"
- September 30, 2014
- October 3, 2014
- January 27, 2015
- February 26, 2015 – "14 people. Go over Parxsolutions.com for Prior auth help with Dr. Sofia [Vaisman]"
- July 31, 2015 – "12-14ppl"
- January 12, 2017
- March 21, 2017

The above luncheons and other actions were also Stark violations as explained below (Exhibit 11).

75.    Relators were scheduled to cater to lunches to the office of Dr. Parviz Amini on thirteen (13) different occasions since March 2014, despite the fact that other Novo Nordisk sales representatives were catering lunches to that office during the same time period. Some examples of lunches for Dr. Amini include but are not limited to the following:

- March 27, 2014
- June 11, 2014
- July 23, 2014

- September 4, 2014
- January 29, 2015
- February 18, 2015
- October 7, 2015
- August 11, 2016
- August 17, 2016
- December 8, 2016
- February 9, 2017
- February 15, 2017
- March 2, 2017

The above luncheons and other actions were also Stark violations as explained below (Exhibit 12).

76.     Relators were scheduled to cater lunches to the office of Dr.'s Lee and Chestnut on nineteen (19) different occasions since March 2014, despite the fact that other Novo Nordisk sales representatives were catering lunches to that office during the same time period. These luncheons and other actions were also Stark violations as explained below (Exhibit 13).

## KICKBACKS IN THE FORM OF SPEAKER HONORARIA

77.     Speaker panels were completely overseen by Novo Nordisk's marketing department. Marketing would nominate and invite the speakers.

78.     Novo Nordisk rewarded physicians with many of these kickbacks for access to their patient files and the ability to switch large quantities patients through local pharmacies to Victoza, Levemir, Novolog, Tresiba, Saxenda, and other Novo Nordisk's drugs. Some physicians, who switched a large number of patients to Novo Nordisk's drugs, were given gifts

28

including expensive meals and frequent, continuous catered meals for themselves and their large staffs at their offices.

79.     Novo Nordisk established formal internal guidelines for the award of these benefits to physicians, in effect pushing "prescribe to play," quid pro quo-focused sales strategies which are based entirely on the amount of prescriptions by that physician that could be switched by the local pharmacies. The recipients of these awards and benefits were selected by Novo Nordisk marketers based on the recipients' ability to help effectuate drug switches to Victoza, Levemir, Novolog, Tresiba, Saxenda, and other Novo Nordisk's drugs, and to influence other physicians to do so.

80.     Paid speakers received increasing amounts of money over time with Novo Nordisk, starting from One Thousand Dollars ($1,000) per presentation and increasing up to Three Thousand Dollars ($3,000) per presentation depending on the speaker. As long as the money was in the budget, Novo Nordisk pushed its sales representatives to pay for speakers in order to entice them to help effectuate more drug switches through local pharmacies.

81.     For example, a February 23, 2016 Novo Nordisk speaker dinner for promoting Tresiba was set up by its district sales manager Defendant Sarah McLeish, whose territory covered most of the area from Beverly Hills out to Santa Barbara, California to pay Two Thousand and Nine Hundred Dollars ($2,900) to Dr. Daniel Nadeauor and Two Thousand and Four Hundred Dollars ($2,400) to Dr. David Berger (Exhibit 14).

82.     For example, on December 14, 2015, district sales manager Defendant Sarah McLeish emailed the Relators to tell them she had created a Fourteen Thousand Two Hundred Dollar ($14,200) budget for them to run just three (3) speaker programs (Exhibit 15).

83.     Often the physicians attending were friends, colleagues or referral partners, and this was

no more than a social event, an opportunity to have a referral dinner and enjoy some entertainment provided to them by Novo Nordisk.

84.     Dinners were scheduled several times per month and lunches given were every day. Most of the time, the restaurant would bring in the food, but sometimes the sales representatives had to bring in the food. Offices were also brought coffee, breakfast, and other treats on a consistent basis.

85.     Novo Nordisk knew that its provision of kickbacks to these physicians was illegal and made efforts to conceal its illegal, fraudulent scheme by funneling some payments through third-party consulting organizations.

86.     For example, on February 9, 2017, Defendant third party pharmaceutical marketing organization AHM planned and paid for a $100 per plate dinner for up to twenty-six (26) attendees at Ruth's Chris Steak House in Woodland Hills, California. Novo Nordisk paid speaker Dr. Minou P. Tran, a Downey, California endocrinologist, to speak at the event, and paid $560.63 for her round-trip limousine ride from her home in Huntington Beach, California to the restaurant (Exhibit 16). Dr. Tran was selected to be a paid speaker as a quid pro quo arrangement, because she was in the top 3.38% of Medicaid prescribers and top 1.73% of all prescribers for Novo Nordisk drugs out of approximately 5,855 physicians in the Southern California sales region (Exhibit 17).

87.     For example, on March 10, 2016, Defendant AHM planned a dinner with speaker Dr. Minou P. Tran at Ruth's Chris Steak House in Woodland Hills, California (Exhibit 18).

88.     Novo Nordisk also understood that its provision of these kickbacks actually created the ability for sales representatives to force through drug switches to Victoza, Levimir, Novolog, Tresiba, Saxenda and other Novo Nordisk drugs through allied local pharmacies. Many of these

drugs were paid for by Medicaid, Medicare, and the TRICARE health care system for military members and their families. Had the United States and the several States known that these drugs were used due to a fraudulent local pharmacy switching scheme, they would not have provided reimbursement for these drugs.

## NOVO NORDISK'S SCHEMES RESULTED IN FALSE CLAIMS TO MEDICAID AND MEDICARE

89.     Novo Nordisk's territory business plans often included tracking of physicians by their volume of Medicare and Medicaid patients, average duration of treatment, and the average revenue from Novo Nordisk drugs. Novo Nordisk management utilized this Medicaid and Medicare volume information in order to determine which physicians to target for expensive meals and cash payments.

90.     For example, Novo Nordisk tracked their customer Defendant Dr. Minas Kochumian from Northridge, California on a fourth Quarter 2014 tracking document as having 74% of his insulin patients and 75% of his non-insulin anti-diabetic patients ("NIAD") on Medicare Part D. Novo Nordisk sales managers assigned Dr. Kochumian a "Gold" level status for his high prescribing of Victoza and Levemir, and a "Silver" level status for his prescribing of NovoLog, meaning that he was to get more sales calls, lunches, and other rewards (Exhibit 19).

91.     For example, Novo Nordisk tracked their customer Dr. Treise Chesnut from Newbury Park, California on a fourth Quarter 2014 tracking document as having 19% of her insulin patients and 24% of her NIAD patients on Medicare Part D, and 4% of her NIAD patients on Medicaid (Exhibit 20).

92.     For example, Novo Nordisk tracked their customer Dr. Mehran Okhovat from Northridge, California on a fourth Quarter 2014 tracking document as having 47% of his insulin

patients and 46% of his NIAD patients on Medicare Part D. Novo Nordisk sales managers assigned Dr. Okhovat a "Gold" level status for his high prescribing of Victoza, and a "Silver" level status for his prescribing of NovoLog and Levemir, meaning that he was to get more sales calls, lunches, and other rewards (Exhibit 21).

93.     For example, Novo Nordisk tracked their customer Dr. Boris Vaisman from Woodland Hills, California on a fourth Quarter 2014 tracking document as having 68% of his insulin patients and 69% of his NIAD patients on Medicare Part D. Novo Nordisk sales managers assigned Dr. Vaisman a "Gold" level status for his high prescribing of Victoza, and a "Silver" level status for his prescribing of Levemir, meaning that he was to get more sales calls, lunches, and other rewards (Exhibit 22).

94.     Payment for dinner and other incentives to increase local pharmacy drug switches from a physician for Victoza, Levemir, Novolog, Tresiba, Saxenda, and other Novo Nordisk drugs is inappropriate and illegal. According to the federal Health and Human Services Office of the Inspector General (HHS OIG), paid meals would be inappropriate if they are tied directly or indirectly to the generation of federal health care program business for the manufacturer, or for the purposeful inducement of business. *See, e.g.*, 68 F.R. 23738. ("these arrangements [entertainment, recreation, travel, meals, etc.] potentially implicate the anti-kickback statute if any one purpose of the arrangement is to generate business.")

95.     Novo Nordisk knew their payments to physicians were intended to help effectuate illegal pharmacy drug switches. In fact, Novo Nordisk provided personnel with guidelines that indicated that field employees could occasionally provide modest meals or snacks to health care professionals where the primary purpose is an informational presentation. In contrast, Novo Nordisk's dinner events with paid speakers were often a sham, with the speaker getting paid up

to Three Thousand Dollars ($3,000) per speaking event, but having no real responsibility. Physicians received prepared slides from Novo Nordisk to speak from, so that the physicians did not have to put forth any effort to prepare a presentation. Physicians sometimes simply opened a laptop on the table at dinner with some slides on it, and then only spoke for five (5) to ten (10) minutes, or did not speak at all and simply enjoyed the lavish dinner with the other attendees.

96.     Novo Nordisk's scheme to pay physicians to help effectuate local pharmacy drug switches resulted in specific sales. Novo Nordisk, like most branded drug companies, monitor the relationship of its sales to its promotional efforts over a very short timeframe; Novo Nordisk would be concerned about a drop in sales within a certain therapeutic regime not after a year look-back, or even a quarterly look-back, but over a period of just weeks. Novo Nordisk's marketing and sales strategy documents show that at least on a weekly basis Novo Nordisk were tracking prescription volume by physician, and tracking the percentage change in local pharmacy drug switches to Novo Nordisk's drugs.

97.     For example, Novo Nordisk tracked their customer Defendant Dr. Minas Kochumian from Northridge, California on a first and second Quarter 2016 tracking document as having 67% of his insulin patients and 76% of his non-insulin anti-diabetic patients ("NIAD") on Medicare Part D, and 2% of his NIAD patients on Medicaid. Novo Nordisk sales managers assigned Dr. Kochumian a "Gold" level status for his high prescribing of Victoza and Levemir, and a "Silver" level status for his prescribing of NovoLog, meaning that he was to get more sales calls, lunches, and other rewards (Exhibit 23).

98.     For example, Novo Nordisk tracked their customer Dr. Treise Chesnut from Newbury Park, California on a first and second Quarter 2016 tracking document as having 4% of her insulin patients and 25% of her NIAD patients on Medicare Part D, and 3% of her NIAD patients

on Medicaid.  Novo Nordisk sales managers assigned Dr. Chesnut a "Silver" level status for her

high prescribing of Victoza, meaning that she was to get more sales calls, lunches, and other

rewards (Exhibit 24).

**99.**　　For example, Novo Nordisk tracked their customer Dr. Mehran Okhovat from

Northridge, California on a first and second Quarter 2016 tracking document as having 53% of

his insulin patients and 36% of his NIAD patients on Medicare Part D, and 14% of his insulin

and 3% of his NIAD patients on Medicaid. Novo Nordisk sales managers assigned Dr. Okhovat

a "Gold" level status for his high prescribing of Victoza, and a "Silver" level status for his

prescribing of NovoLog and Levemir, meaning that he was to get more sales calls, lunches, and

other rewards (Exhibit 25).

**100.**　　For example, Novo Nordisk tracked their customer Dr. Boris Vaisman from Woodland

Hills, California on a first and second Quarter 2016 tracking document as having 52% of his

insulin patients and 41% of his NIAD patients on Medicare Part D, and 4% of his insulin patients

and 4% of his NIAD patients on Medicaid. Novo Nordisk sales managers assigned Dr. Vaisman

a "Gold" level status for his high prescribing of Victoza, and a "Silver" level status for his

prescribing of NovoLog, meaning that he was to get more sales calls, lunches, and other rewards

(Exhibit 26).

**101.**　　Novo Nordisk tracked the return on investment ("ROI") of paid travel and expensive

meals for physicians through this system of ranking physicians as "Gold" and "Silver" level

prescribers based on their prescription volume. Novo Nordisk's sales representatives were

instructed to ask physicians for additional patient lists and approval to force through local

pharmacy drug switches without specific prescriptions when the physicians were paid to speak at

a lavish meal event, and told to track follow-up pharmacy drug switches through the Novo

Nordisk tracking lists for that physician's patients.

**102.**    Novo Nordisk instructed its sales representatives to review patient records at physician's offices and instruct them to switch their patients to receive Victoza, Levemir, Novolog, Tresiba, Saxenda, and other Novo Nordisk's drugs instead of competitor drugs.

**103.**    Defendants executed a willful and premeditated scheme of local pharmacy drug switching without physician's orders, and violations of patients' HIPPA protections. The Relators, who were vocal about these tactics, were retaliated against with unreasonable plans of corrective action, threatened repeatedly with termination, and were many times verbally and publicly reprimanded for not towing the company line, and generally not being "positive."

## RETALIATION

**104.**    In the fall of 2015, Relator Ayers called the Novo Nordisk Compliance Department and spoke to Anna Johannson Vecchi to complain about non-Compliance with corporate policies and with laws by his sales manager, Defendant Sarah McLeish. He stated that McLeish was, among other things, getting her Beverly Hills sales district to the highest sales in the nation for Victoza, because McLeish was running a program where her sales representatives there were setting up a system to help Novo Nordisk get prescriptions paid for by insurance companies. This system was called the PASS system, and it was used to assist a doctor's office in getting prior authorization from an insurance company to pay for a patient's Victoza drug prescriptions. Under McLeish's instructions, some sales representatives in Beverly Hills were retaining their own password to the PASS system and logging in and pushing drugs through for insurance payment approval as if they were acting on the authority of the physician. In this way, McLeish's Beverly Hills team became the top-ranked Victoza sales district nationally, thereby increasing their own sales commissions and those for McLeish herself.

105.   On or about September 14, 2016, Relator Gregory was called by Anna Johannson Vecchi with Novo Nordisk compliance investigations. She was doing an investigation of the sales team for Beverly Hills for whom Defendant Sarah McLeish was the manager. Relator Gregory informed her that he had compliance concerns about McLeish demanding that people violate HIPAA, Stark, anti-kickback and other laws by asking pharmacies to print lists of patients, and then telling the pharmacies to switch patients for certain doctors onto Novo Nordisk drugs.

106.   On or about September 16, 2016, Relator Gregory called Ms. Vecchi with the Novo Nordisk Compliance Department to tell her he was sending some paperwork related to sales representatives Charlene Negari and Megan Wilson pulling patient lists in order to switch patient drugs at Five Star Pharmacy per Defendant Sarah McLeish's instructions.

107.   From mid-September to early October 2016, Defendant Sarah McLeish began to retaliate against both Relators for making Compliance reports against her by attacking them financially and through adverse actions against their work record.

108.   For example, by October 2016, Relators became aware that McLeish had added a doctor to their target list that actually was not in the field of medicine that they were supposed to call on and should never have been on their list. Dr. Sawsan Barakat is an endocrinologist in Northridge, California, and McLeish added her to the Relator's targeting list despite the fact that the Relators were not supposed to make sales calls on endocrinologists. This meant that Dr. Barakat's prescriptions inappropriately counted against the targeted amount of sales that the Relators had to achieve in order to earn sales commissions. Because Dr. Barakat had prescribed over 90% non-Novo Nordisk products in the prior 13 weeks, that volume had reduced the commissions for both Relators from a 100% payout within the Novo Nordisk commission structure to a 50% payout, costing each of them thousands of dollars in lost revenue (Exhibit 27).

**109.**    On October 5, 2016, Defendant Sarah McLeish met with Relator Ayers and put him on an "action plan", a negative corporate action that could lead to termination. The action plan was filled with falsehoods. Relator Ayers was written up by McLeish for failing to note on a March 23, 2016 field ride that a new doctor in his territory, Defendant Dr. Ilya Rachman, was a high prescriber ["field ride" is when a sales representative drives his/her sales manager around and meets customers with them for the day]. However, Ayers was the one who pointed out the new doctor in the territory to McLeish, and McLeish was not able to get information on Dr. Rachman's prescribing habits until later that day or the next day when she called the former sales manager over Dr. Rachman's territory and sent an email to the sales team about Dr. Rachman's high numbers. Therefore, McLeish used an untrue statement about Relator Ayers in March 2016, to put him on a negative action plan seven months later in October 2016 when such information became apparent. This negative action had nothing to do with correcting the March 2016 behavior and was instead done in retaliation for the fact that Relator had turned in a Compliance report on Defendant McLeish that led to an investigation of her illegal conduct. In fact, McLeish had said nothing negative to Relator Ayers about Dr. Rachman's numbers for the entire seven-month period, but only created the incident as a "negative fact" in October 2016 in order to retaliate against Relator Ayers for his having reported her to the Compliance Department for investigation.

**110.**    Relators both called Defendant Tim Vannaman on or about October 25, 2016 to voice their concerns about Defendant Sarah McLeish's retaliatory conduct, as Vannaman was her boss within the company. On or about November 3, 2016, Relator Gregory shared his concerns about McLeish's illegal and non-compliant conduct with Bill Hughes from Novo Nordisk's HR Department.

**111.** On or about November 14, 2016, Defendant Sarah McLeish presented Relator Gregory with a 60-day action plan, a negative corporate action that could lead to termination. The action plan was filled with falsehoods, some of which were directly contradicted by McLeish in her own written coaching reports for Relator Gregory (Exhibit 28).

**112.** On or about November 16, 2016, Relator Gregory spoke to Bill Hughes with Novo Nordisk's HR office by phone and stated that both Relators were clearly being retaliated against. He spoke again with Hughes the following day and forwarded written information to back up his claims.

**113.** On or about January 10, 2017, Relator Gregory had a field ride with Defendant Regional Business Director Tim Vannaman, who gave Relator sales advice that included using an off-label sales pitch for one drug (Tresiba), and inappropriately talking about a clinical study on Tresiba that had not yet been published and would have been illegal to discuss with physicians.

**114.** On or about February 2, 2017, Relator Ayers and on or about February 8, 2017, Relator Gregory were informed by Defendant Sarah McLeish and Joe Daily from the Novo Nordisk HR Department that they would be put on additional 60-day or 90-day action plans, which would be a negative corporate action affecting their future with the organization or resulting in their termination. They were also given the option of signing 12-week severance packages but requiring that they sign general release forms from legal liability (Exhibit 29). Instead of agreeing to the severance packages, both Relators took family and medical leave for a limited period of time, found other jobs, and ultimately resigned from Novo Nordisk as they were being constructively discharged.

**115.** These long-term retaliatory actions by Defendant Sarah McLeish, Defendant Tim Vannaman, and Defendant Novo Nordisk damaged Relators financially by costing them

thousands of dollars in wrongfully missed commission payments, thousands of dollars in lost

wages while on leave and hunting for jobs, and ultimately caused them to have to leave their jobs

at Novo Nordisk.

## CONCLUSION

116.    Defendants' fraudulent activities, as set forth in this Complaint have resulted in

significant fraud on the government's health care systems. These concerted, national schemes for

fraudulent promotion of Novo Nordisk's drugs have resulted in at least millions of dollars in

unnecessary and fraudulent claims for reimbursement increasing the cost of healthcare and

wasting the public fisc as well as fraudulently taking monies from private insurers in violation of

various state laws.

## COUNT I: FALSE CLAIMS ACT

### CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS

117.    This is a civil action by the Plaintiff, UNITED STATES, and the Relators, JASON

GREGORY AND WILBUR AYERS, on behalf of the UNITED STATES and on behalf of the

Relators, against the Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM

VANNAMAN; GUS TORRES; ILYA RACHMAN MD; ILYA RACHMAN MD, INC.;

RACHMAN MEDICAL GROUP; MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD,

A MEDICAL CORPORATION; ADVANCED HEALTH MEDIA, LLC; AHM; FIVE STAR

PHARMACY; and FIVE STAR RX, INC., under the False Claims Act, 31 U.S.C. §§3729-32.

118.    Relators reallege and incorporate the allegations above as if fully set forth herein and

further allege as follows:

119.    The Defendant, from at least January 1, 2011 to the present date knowingly [as defined in

31 USC, §3729(b)] caused to be presented to officers or employees of the UNITED STATES

GOVERNMENT and STATES GOVERNMENTS false or fraudulent claims for payment or

approval, in that The Defendant, caused to be presented to officers or employees of the UNITED

STATES GOVERNMENT AND STATES GOVERNMENTS false or fraudulent price and cost

information for the specified drugs (as the term "specified drugs" has been defined throughout

this Complaint) and caused the UNITED STATES and STATE GOVERNMENTS to pay out

sums of money to the healthcare providers and suppliers of the Defendant's specified drugs,

grossly in excess of the amounts permitted by law, resulting in great financial loss to the

UNITED STATES and STATE GOVERNMENTS.

**120.**    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED

STATES suffered actual damages in amount to be proven at trial, all in violation of 31 U.S.C.

§3729(a)(1)(A).

## COUNT II: FALSE CLAIMS ACT

### CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A

### FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT

**121.**    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, This is a civil

action by the Plaintiff, UNITED STATES, and the Relators, JASON GREGORY AND

WILBUR AYERS, on behalf of the UNITED STATES and on behalf of the Relators, against the

Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM VANNAMAN; GUS TORRES;

ILYA RACHMAN, MD; ILYA RACHMAN, MD, INC.; RACHMAN MEDICAL GROUP;

MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD, A MEDICAL CORPORATION;

ADVANCED HEALTH MEDIA, LLC; AHM; FIVE STAR PHARMACY; and FIVE STAR

RX, INC., under the False Claims Act, 31 U.S.C. §§3729-32.

**122.**    Relators reallege and incorporate the allegations above as if fully set forth herein and

40

further allege as follows:

**123.**   The Defendant, from at least January 1, 2011 to the present date knowingly [as defined in

31 USC, §3729(b)] caused false records or statements to be made or used to get false or

fraudulent claims to be paid or approved by the GOVERNMENT, in that The Defendant, caused

false records or statements of process and costs of the Defendant's drugs specified herein to be

used by the GOVERNMENT to pay or approve claims presented by healthcare providers and

suppliers of the Defendant's specified drugs, which claims were grossly in excess of the amounts

permitted by law, resulting in great financial loss to the UNITED STATES and STATE

GOVERNMENTS.

**124.**   Because of the Defendant's conduct as set forth in this Count, the UNITED STATES

suffered at least millions of dollars of actual damages, all in violation of 31 U.S.C.

§3729(a)(1)(B).

## COUNT III: FALSE CLAIMS ACT

### CAUSING FALSE RECORDS OR STATEMENT TO BE USED TO CONCEAL AN

### OBLIGATION TO PAY MONEY TO THE GOVERNEMENT

**125.**   This is a civil action by the Plaintiff, UNITED STATES, and the Relators, JASON

GREGORY AND WILBUR AYERS, on behalf of the UNITED STATES and on behalf of the

Relators, against the Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM

VANNAMAN; GUS TORRES; ILYA RACHMAN, MD; ILYA RACHMAN MD, INC.;

RACHMAN MEDICAL GROUP; MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD,

A MEDICAL CORPORATION; ADVANCED HEALTH MEDIA, LLC; AHM; FIVE STAR

PHARMACY; and FIVE STAR RX, INC., under the False Claims Act, 31 U.S.C. §§3729-32.

**126.**   Relators reallege and incorporate the allegations above as if fully set forth herein  and

41

further allege as follows:

**127.**    The Defendants, from at least January 1, 2011 to the present date knowingly [as defined in 31 USC, §3729(b)] caused false records or statements to be made or used to conceal obligations to pay money to the GOVERNMENT, in that: the Defendants knew that the States' Medicaid Programs have used the Defendants' false price and cost representations for purposes of paying or approving claims of the healthcare providers and suppliers of the Defendant Novo Nordisk's specified drugs; the Defendants knew that sums of money paid by the STATES GOVERNMENTS to the healthcare providers and suppliers if the Defendant Novo Nordisk's specified drugs were grossly in excess of the amounts permitted by law; the Defendants knew it was the obligation of the State Governments to recoup governments' funds paid in excess of the amounts permitted by law; The Defendants, nevertheless, continued to conceal the facts that they had caused to be made or used false records or statements of prices and costs for the specified drugs that were grossly in excess of the reasonable amounts permitted by law and to conceal from the GOVERNMENT an obligation to pay to the GOVERNMENT  the excessive reimbursement amounts paid to healthcare providers for which DEEFENDANTS were directly responsible.

**128.**    Because of the Defendants' conduct as set forth in this Count, the UNITED STATES suffered millions of dollars in actual damages, all in violation of 31 U.S.C. §3729(a)(1)(G).

## COUNT IV: FALSE CLAIMS ACT

## CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS; ILLEGAL RENUMERATION

**129.**    This is a civil action by the Plaintiff, UNITED STATES, and the Relators, JASON GREGORY AND WILBUR AYERS, on behalf of the UNITED STATES and on behalf of the

Relators, against the Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM

VANNAMAN; GUS TORRES; ILYA RACHMAN, MD; ILYA RACHMAN MD, INC.;

RACHMAN MEDICAL GROUP; MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD,

A MEDICAL CORPORATION; ADVANCED HEALTH MEDIA, LLC; AHM; FIVE STAR

PHARMACY; and FIVE STAR RX, INC., under the False Claims Act, 31 U.S.C. §§3729-32.

**130.**     Relators reallege and incorporate the allegations above as if fully set forth herein  and

further allege as follows:

**131.**     The Defendants, from at least January 1, 2011 to the present date knew that the prices

charged to their customers for the specified drugs were significantly reduced in the amount from

the prices and costs represented by the Defendants and upon which the Defendants knew the

Medicaid claims would be approved and paid. Accordingly, the Defendants have each knowingly

offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash

or in kind, remuneration to their customers on the form of price reductions and/or in the form of

illegal remuneration from the States' Medicaid Programs to induce them to purchase, order or

arrange or to recommend purchasing, arranging or ordering the specified drugs for which the

Defendants knew that payment would be made, in whole or in part, by the States' Medicaid

Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b) and

18 U.S.C.§2

**132.**     The Defendants' knowing and willful actions in arranging for their customers to receive

remuneration prohibited by 42 U.S.C. §1320a-7b(b), in causing the omission of material

information from the claims, and in causing the failure to properly disclose and appropriately

reflect the remuneration in the claims, caused the claims for the specified drugs to be false and

fraudulent claims and caused the claims to be presented to the States' Medicaid Programs for

payment and approval in violation of 31 U.S.C. §3729(a)(1)(A).

**133.**  Because of the Defendants' conduct as set forth in this Count, the UNITED STATES suffered millions of dollars of actual damages, all in violation of 31 U.S.C. §3729(a)(1).

**COUNT V: FALSE CLAIMS ACT**

**CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT; PROHIBITED REFERRALS, CLAIMS AND COMPENSATION ARRANGEMENTS**

**134.**  This is a civil action by the Plaintiff, UNITED STATES, and the Relators, JASON GREGORY AND WILBUR AYERS, on behalf of the UNITED STATES and on behalf of the Relators, against the Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM VANNAMAN; GUS TORRES; ILYA RACHMAN, MD; ILYA RACHMAN, MD, INC.; RACHMAN MEDICAL GROUP; MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD, A MEDICAL CORPORATION; ADVANCED HEALTH MEDIA, LLC; AHM; FIVE STAR PHARMACY; and FIVE STAR RX, INC., under the False Claims Act, 31 U.S.C. §§3729-32.

**135.**  Relators reallege and incorporate the allegations above as if fully set forth herein and further allege as follows:

**136.**  The Defendants, from at least January 1, 2011 to the present date knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services [outpatient prescription drugs] furnished pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the Defendant Novo Nordisk has financial relationships, for which the Defendants knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such prohibited referrals, claims bills and

44

compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C. §2.

**137.**   The Defendants knowingly made or used or caused referring physicians, physician groups or outpatient clinics to make or use records or statements to get false or fraudulent claims and bills for the Defendant Novo Nordisk's outpatient prescription drugs to be paid or approved by the States' Medicaid Programs.

**138.**   The Defendants' knowing presentment or causing others to present, claims or bills to the States' Medicaid programs in violation of 42 U.S.C. §1395nn(a)(1)(B) without disclosing facts revealing said violations constituted the making or using, or the causing others to make or use, false records or statements to get a false or fraudulent claims paid or approved by the GOVERNMENT in violation of 31 U.S.C. §3729(a)(1)(B).

**139.**   Because of the Defendants' conduct as set forth in this Count, the UNITED STATES suffered millions of dollars in actual damages, all in violation of 31 U.S.C. §3729(a)(1)(B).

<u>**COUNT VI: FALSE CLAIMS ACT**</u>

**CONSPIRING TO DEFRAUD THE GOVERNMENT BY GETTING A FALSE OR FRAUDULENT CLAIM ALLOWED OR PAID**

**140.**   This is a civil action by the Plaintiff, UNITED STATES, and the Relators, JASON GREGORY AND WILBUR AYERS, on behalf of the UNITED STATES and on behalf of the Relators, against the Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM VANNAMAN; GUS TORRES; ILYA RACHMAN, MD; ILYA RACHMAN MD, INC.; RACHMAN MEDICAL GROUP; MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD, A MEDICAL CORPORATION; ADVANCED HEALTH MEDIA, LLC; AHM; FIVE STAR PHARMACY; and FIVE STAR RX, INC., under the False Claims Act, 31 U.S.C. §§3729-32.

141.    Relators reallege and incorporate the allegations above as if fully set forth herein  and further allege as follows:

142.    With respect to State Medicaid Programs, this Count also applies to all Defendant Novo Nordisk manufacturing specified drugs which: 1) were multiple-source drugs and/or single-source drugs, 2) were subject to State Medicaid reimbursement methodology similar to the Medicare "J Code" methodology, and 3) had a falsely inflated reported AWP and/or WAC or another falsely inflated reported price or cost if such price or cost was utilized in creating an array or prices or costs from which one was selected or reimbursement of all versions of a given drug.

143.    Defendant Novo Nordisk's liability as to this Count extends from the time it first reported a falsely inflated AWP and/or WAC, or in the case of Medicaid, a falsely inflated AWP and/or WAC or such other price cost used to create the array of drug prices or costs, until such time, if any, Defendant stopped reporting said inflated AWP and/or WAC or, in the case of Medicaid, stopped reporting said inflated AWP and/or WAC or such other reported price or cost used to create the array of drug prices or costs from which one was selected for reimbursement purposes.

144.    Because of the Defendant Novo Nordisk's conduct as set forth in this Count, the UNITED STATES suffered millions of dollars in actual damages, all in violation of 31 U.S.C. §3729(a)(1)(C).

**COUNT VII: FALSE CLAIMS ACT**

**RETALIATION/WRONGFUL TERMINATION**

**VIOLATION OF THE RETALIATION STATUTE, 42 U.S.C. § 3730(h)**

145.    This is a civil action by the Plaintiff, UNITED STATES, and the Relators, Jason Gregory and Wilbur Ayers, on behalf of the UNITED STATES and on behalf of the Relators, against the

Defendant: NOVO NORDISK, INC. under the False Claims Act, 31 U.S.C. §§3729-32.

**146.**     Relators reallege and incorporates the allegations above as if fully set for herein and further alleges as follows:

**147.**     Defendant Novo Nordisk retaliated by harassing Relators and taking actions to prevent Relators from properly carrying out job responsibilities as a result of lawful acts done in furtherance of this action. These lawful acts included reporting violations of the FDCA and anti-kickback and Stark statutes to the UNITED STATES and NOVO NORDISK management and refusing to engage in NOVO NORDISK's scheme to promote illegal local pharmacy drug switching to Novo Nordisk drugs without a physician's specific orders. This retaliation was in violation of 31 U.S.C. § 3730(h).

**148.**     As a direct and proximate result of this unlawful and discriminatory retaliation, Relators have suffered emotional pain and mental anguish, together with serious economic hardship, including increased medical expenses, lost wages and special damages associated with Relators' efforts to obtain alternative employment, in an amount to be proven at trial.

<u>**COUNT VIII**</u>

**(Arkansas Medicaid Fraud False Claims Act, A.C.A. § 20-77-901 *et seq.* against Defendant Novo Nordisk)**

**149.**     Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows. Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in the State of Arkansas. Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Arkansas as well. This is a qui tam action brought by Relators and the State of Arkansas to recover treble damages and civil

penalties under the Arkansas Medicaid Fraud False Claims Act, A.C.A. § 20-77-901 et seq.

**150.**     The Arkansas Medicaid Fraud False Claims Act § 20-77-902 provides liability for any person who-

    a.   Knowingly makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under the Arkansas Medicaid program;

    b.   At any time knowingly makes or causes to be made any false statement or representation of a material fact for use in determining rights to a benefit or payment;

    c.   In addition, A.C.A. § 20-77-902(7)(A) prohibits soliciting, accepting, or agreeing to accept any type of remuneration for recommending the purchase, lease, or order of any good, facility, service, or item for which payment may be made under the Arkansas Medicaid program.

**151.**     Defendant Novo Nordisk violated the Arkansas Medicaid Fraud False Claims Act §20-77-902(1) (2) & (7)(A) from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**152.**     Defendant Novo Nordisk furthermore violated the Arkansas Medicaid Fraud False Claims Act § 20-77-902(1) & (2) and knowingly caused thousands of false claims to be made, used and presented to the State of Arkansas from at least 2011 to the present by its violation of federal and state laws, including A.C.A. § 20-77-902(7)(A), the Anti-Kickback Act and Stark Act Requirements, as described herein.

**153.**     The State of Arkansas, by and through the Arkansas Medicaid program and other State health care programs, and unaware of Defendant's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

**154.**    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Arkansas is connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**155.**    Had the State of Arkansas known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**156.**    As a result of Defendant Novo Nordisk's violations of § 20-77-902(1) (2) & (7)(A), the State of Arkansas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**157.**    Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to A.C.A. § 20-77-911(a) on behalf of Relators and the State of Arkansas.

**158.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Arkansas in the operation of its Medicaid program.

**159.**    Pursuant to the Arkansas Medicaid Fraud False Claims Act, the State of Arkansas and Relators are entitled to the following damages as against Defendant Novo Nordisk:

**160.**    To the STATE OF ARKANSAS:

    a.    Three times the amount of actual damages which the State of Arkansas has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim

which Defendant Novo Nordisk's caused to be presented to the State of Arkansas;

   c.  Prejudgment interest; and

   d.  All costs incurred in bringing this action.

**161.**   To RELATORS:

   a.  The maximum amount allowed pursuant to A.C.A. § 20-77-911(a) and /or any other applicable provision of law;

   b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

   c.  An award of reasonable attorneys' fees and costs; and

   d.  Such further relief as this court deems equitable and just.

## COUNT IX

### (California False Claims Act, Cal. Gov't Code § 12650 et seq.)

**162.**   Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

**163.**   Additionally, Relators state that the course of conduct described in this Complaint was a California statewide practice of Defendants. Defendants conduct business in the State of California. Defendants' actions described herein occurred in the State of California as well.

**164.**   This is a qui tam action brought by Relators and the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code § 12650 et seq.

**165.**   Cal. Gov't Code § 12651(a) provides liability for any person who—

   a.  Knowingly presents, or causes to be presented, to an officer or employee of the state of any political division thereof, a false claim for payment or approval;

    b.   Knowingly makes, uses, or causes to be made or used a false record of statement to get a false claim paid or approved by the state or by any political subdivision;

    c.   Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state of by any political subdivision.

    d.   Is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

166.    In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal. Bus. & Prof. Code §§ 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code § 14107.2.

167.    Defendants violated Cal Bus. & Prof. Code §§ 650 and 650.1 and Cal. Welf. & Inst. Code § 14107.2 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

168.    Defendants furthermore violated Cal. Gov't Code § 12651(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of California from at least 2011 to the present by its violation of federal and state laws, including Cal. Bus. & Prof. Code §§ 650 and 650.1 and Cal. Welf. & Inst. Code § 14107.2, the Anti-Kickback Act and Stark Act Requirements, as described herein.

169.    The State of California, by and through the California Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

170.    Compliance with applicable Medicare, Medi-Cal and the various other federal and state

laws cited herein was implied, and upon information and belief, also an express condition of payment of claims submitted to the State of California in connection with Defendants' fraudulent and illegal practices.

171.   Had the State of California known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

172.   As a result of Defendants' violations of Cal. Gov't Code § 12651(a), the State of California has been damaged in an amount far in excess of millions of dollars exclusive of interest.

173.   Relators are private persons with direct and independent knowledge of the allegations of this Complaint, this action is being brought pursuant to Cal. Gov't Code § 12652(c) on behalf of Relators and the State of California.

174.   This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

175.   Pursuant to the California False Claims Act, the State of California and Relators are entitled to the following damages as against Defendants:

176.   To the STATE OF CALIFORNIA:

    a.   Three times the amount of actual damages which the State of California has sustained as a result of Defendants' fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of California;

    c.   Prejudgment interest; and

d.  All costs incurred in bringing this action.

**177.**   To RELATORS:

a.  The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and /or any other applicable provision of law;

b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this Court deems equitable and just.

## COUNT X

### (California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7 et seq.)

178.    Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

179.    This is a claim for treble damages and penalties under the California Insurance Fraud Prevention Act.

180.    By virtue of the acts described above, Defendants knowingly utilized a scheme by which they improperly procured "runners, cappers, steerers, and other persons" to procure patients who held private insurance contracts and against whom Defendants could cause the filing of claims for payment. *See* Cal. Ins. Code § 1871.7(a).

181.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the private insurers in California, or for patients in California those insurers covered, for payment or approval in violation of each patient's private health insurance contract.

182.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements and omitted material facts to induce the private insurers in California, or for patients in California covered by those insurers, to approve or pay such false and fraudulent claims.

183.    By virtue of the acts described above, the Defendants conspired to violate the California Insurance Fraud Prevention Act and each patient's private health insurance contract.

184.    The private insurers in California, or those insurers that covered patients in California, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be presented by Defendants, paid and continue to pay the claims that are non-payable as a result of Defendants' illegal conduct.

**185.** Defendants knowingly submitted and/or caused to be made or used false records or false statements in order to avoid or decrease their respective obligations to return overpayments to these private insurance companies.

**186.** By reason of Defendants' acts, these private insurance companies have been damaged, and continue to be damaged, in a substantial amount to be determined at trial.

**187.** Each claim for reimbursement that was a result of the Defendants' scheme represents a false or fraudulent record or statement and a false or fraudulent claim for payment.

**188.** The State of California is entitled to the maximum penalty of $10,000.00 for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Defendants.

**189.** WHEREFORE, Relators request the following relief:

    a.   That this Court enter judgment against Defendants in an amount equal to three times the amount of damages that the private insurance companies have sustained because of Defendants' actions, plus a civil penalty of not less than $5,000.00 and not more than $10,000.00 for each violation of Cal. Ins. Code § 1871.7(a) and (b);

    b.   At least thirty percent (30%) and up to forty percent (40%) of the proceeds of this action to the Relators if the State of California elects to intervene, and forty percent (40%) to fifty percent (50%) if it does not;

    c.   Relator's'' attorneys' fees, litigation and investigation costs, and other related expenses; and

    d.   Such other relief as the Court deems just and appropriate.

## COUNT XI

55

**(Colorado Medicaid False Claims Act, Col. Rev. Stat. §§ 25.5-4-303.5 et seq. against Defendant Novo Nordisk)**

**190.** Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

**191.** Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in the State of Colorado. Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Colorado as well.

**192.** This is a qui tam action brought by Relators and the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, Colorado Revised Statutes § 25.5-4-303.5. et seq.

**193.** Colorado Revised Statutes § 25.5-4-305 provides liability for any person who-

   a. Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

   b. Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

   c. Has possession, custody, or control of property or money used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and knowingly delivers, or causes to be delivered, less than all of the money or property;

   d. Authorizes the making or delivery of a document certifying receipt of property used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

e.   Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state in connection with the "Colorado Medical Assistance Act" who lawfully may not sell or pledge the property;

f.   Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act;"

g.   Conspires to commit a violation of paragraphs (a) to (f) of this subsection.

194.   Defendant Novo Nordisk violated Colorado Revised Statutes § 25.5-4-305 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

195.   Defendant Novo Nordisk furthermore violated Colorado Revised Statutes § 25.5-4-305 and knowingly caused thousands of false claims to be made, used and presented to the State of Colorado from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

196.   The State of Colorado, by and through the State of Colorado Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

197.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Colorado in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

57

198.     Had the State of Colorado known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

199.     As a result of Defendant Novo Nordisk's violations of Colorado Revised Statutes § 25.5-4-305 the State of Colorado has been damaged in an amount far in excess of millions of dollars exclusive of interest.

200.     Relators have direct and independent knowledge of the allegations of this Complaint, this action is brought pursuant to Colorado Revised Statutes § 25.5-4-306(2) on behalf of Relators and the State of Colorado.

201.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Colorado in the operation of its Medicaid program.

202.     Pursuant to the Colorado Medicaid False Claims Act, the State of Colorado and Relators are entitled to the following damages as against Defendant Novo Nordisk:

203.     To the STATE OF COLORADO:

    a.   Three times the amount of actual damages which the State of Colorado has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Colorado;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

204.     To RELATORS:

a.  The maximum amount allowed pursuant to Colorado Revised Statutes § 25.5-4-306(4) and /or any other applicable provision of law;

b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this court deems equitable and just.

## COUNT XII

**(Connecticut False Claims Act for Medical Assistance Programs, Connecticut General Statutes § 17b-301b. et seq. against Defendant Novo Nordisk)**

205.    Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

206.    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Connecticut.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Connecticut as well.

207.    This is a qui tam action brought by Relators and the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act for Medical Assistance Programs, Connecticut General Statutes § 17b-301b. et seq.

208.    Connecticut General Statutes § 17b-301b. provides liability for any person who-

a.  Knowingly presents or causes to be presented to an officer or employee of the state a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

b.  Knowingly make, use or cause to be made or used, a false record or statement to

59

secure the payment or approval by the state of a false or fraudulent claim under a

medical assistance program administered by the Department of Social Services;

c. Conspire to defraud the state by securing the allowance or payment of a false or

fraudulent claim under a medical assistance program administered by the Department

of Social Services.

**209.** Defendant Novo Nordisk violated Connecticut General Statutes § 17b-301b from at least

2011 to the present by engaging in the fraudulent and illegal practices described herein.

**210.** Defendant Novo Nordisk furthermore violated Connecticut General Statutes § 17b-301b

and knowingly caused thousands of false claims to be made, used and presented to the State of

Connecticut from at least 2011 to the present by its violation of federal and state laws, including

the Anti-Kickback Act, and the Stark Act, as described herein.

**211.** The State of Connecticut, by and through the State of Connecticut Medicaid program and

other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and

illegal practices, paid the claims submitted by health care providers and third payers in

connection therewith.

**212.** Compliance with applicable Medicare, Medicaid and the various other federal and state

laws cited herein was an implied, and upon information and belief, also an express condition of

payment of claims submitted to the State of Connecticut in connection with Defendant Novo

Nordisk's fraudulent and illegal practices.

**213.** Had the State of Connecticut known that Defendant Novo Nordisk was violating the

federal and state laws cited herein, it would not have paid the claims submitted by health care

providers and third party payers in connection with 'Defendant Novo Nordisk's fraudulent and

illegal practices.

**214.**    As a result of 'Defendant Novo Nordisk's violations of Connecticut General Statutes §
17b-301b the State of Connecticut has been damaged in an amount far in excess of millions of
dollars exclusive of interest.

**215.**    Relators have direct and independent knowledge of the allegations of this Complaint, this
action is brought pursuant to Connecticut General Statutes § 17b-301d on behalf of Relators and
the State of Connecticut.

**216.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it
is predicated upon the exact same facts as the federal claim, and merely asserts separate damage
to the State of Connecticut in the operation of its Medicaid program.

**217.**    Pursuant to the Connecticut False Claims Act for Medical Assistance Programs, the State
of Connecticut and Relator are entitled to the following damages as against Defendant Novo
Nordisk:

**218.**    To the STATE OF CONNECTICUT:

    a.   Three times the amount of actual damages which the State of Connecticut has
        sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim
        which Defendant Novo Nordisk caused to be presented to the State of Connecticut;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

**219.**    To RELATORS:

    a.   The maximum amount allowed pursuant to Connecticut General Statutes § 17b-301
        and /or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with

this action;

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this court deems equitable and just.

## COUNT XIII

**(Delaware Medicaid False Claims Act, 6 Del. C. § 1201 et seq. against Defendant Novo Nordisk)**

220.    Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

221.    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Delaware.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Delaware as well.

222.    This is a qui tam action brought by Relators and the State of Delaware to recover treble damages and civil penalties under the Delaware Medicaid False Claims Act, 6 Del. C. § 1201 et seq.

223.    6 Del. C. § 1201 et seq. provides liability for any person who—

a.  Knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

b.  Knowingly makes, uses or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved;

c.  Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

d.  Knowingly makes, uses, or causes to be made or used a false record or statement to

conceal, avoid, increase or decrease an obligation to pay or transmit money or property to or from the Government.

224.   Further, 31 Del. C. § 1005 provides that— It shall be unlawful for any person to offer or pay any remuneration (including any kickback, bribe or rebate) directly or indirectly, in cash or in kind to induce any other person . . . [t]o purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any property, facility, service, or item of medical care or medical assistance for which payment may be made in whole or in part under any public assistance program.

225.   Defendant Novo Nordisk violated 6 Del. C. § 1201 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Delaware from 2011 to the present by its violation of federal and state laws, including 31 Del. C. §1005, and Anti-Kickback Act and the Stark Act Requirements, as described herein.

226.   The State of Delaware, by and through the Delaware Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

227.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Delaware in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

228.   Had the State of Delaware known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal

practices.

**229.**    As a result of Defendant Novo Nordisk's violations of 6 Del. C. § 1201(a), the State of Delaware has been damage in an amount far in excess of millions of dollars exclusive of interest.

**230.**    Defendant Novo Nordisk did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

**231.**    Relators are private persons with direct and independent knowledge of the allegations of this Complaint, this action is brought pursuant to 6 Del. C. § 1203(b) on behalf of Relators and the State of Delaware.

**232.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Delaware in the operation of its Medicaid program.

**233.**    Pursuant to the Delaware Medicaid False Claims Act, the State of Delaware and Relators are entitled to the following damages as against Defendant Novo Nordisk:

**234.**    To the STATE OF DELAWARE:

   a.   Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

   b.   A civil penalty on not less than $5,500 and not more than $ 11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Delaware;

   c.   Prejudgment interest; and

d.  All costs incurred in bringing this action.

235.  To RELATORS:

a.  The maximum amount allowed pursuant to 6 Del C. § 1205,and /or any other applicable provision of law;

b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action; and

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this court deems equitable and just.

## COUNT XIV

### (District of Columbia Procurement Reform Amendment Act, D.C. § 2-308.13 et seq. against Defendant Novo Nordisk)

236.   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

237.   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the District of Columbia.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the District of Columbia as well.

238.   This is a qui tam action brought by Relators and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. § 2-308.13 et seq.

239.   D.C. Code § 2-30814(a) provides liability for any person who-

240.   Knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval;

241.    Knowingly makes, uses or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

242.    Conspires to defraud the District by getting a false claim allowed or paid by the District;

243.    Is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District.

244.    In addition, D.C. Code § 4-802(c) prohibits soliciting, accepting, or agreeing to accept any type of remuneration for the following:

   a.   Referring a recipient to a particular provider of any item or service or for which payment may be made under the District of Columbia Medicaid program; or

   b.   Recommending the purchase, lease, or order of any good, facility, service, or item for which payment may be made under the District of Columbia Medicaid Program.

245.    Defendant Novo Nordisk violated D. C. Code § 4-802(c) from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

246.    Defendant Novo Nordisk furthermore violated D. C. Code § 2-308.14(a) and knowingly caused thousands of false claims to be made, used and presented to the District of Columbia from at least 2011 to the present by its violation of federal and state laws, including D. C. Code § 4-802(c), the Anti-Kickback Act and the Stark Act, as described herein.

247.    The District of Columbia, by and through the District of Columbia Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

248.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of

payment of claims submitted to the District of Columbia in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

249.    Had the District of Columbia known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

250.    As a result of Defendant Novo Nordisk's violations of D.C. Code § 2-308.14(a) the District of Columbia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

251.    Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to D.C. Code § 2-308.15(b) on behalf of Relators and the District of Columbia.

252.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the District of Columbia in the operation of its Medicaid program.

253.    Pursuant to the District of Columbia Procurement Reform Amendment Act, the District of Columbia and Relators are entitled to the following damages as against Defendant Novo Nordisk:

254.    To the DISTRICT OF COLUMBIA:

    a.  Three times the amount of actual damages which the District of Columbia has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.  A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the District of Columbia;

67

c.   Prejudgment interest; and

d.   All costs incurred in bringing this action.

**255.**   To RELATORS:

a.   The maximum amount allowed pursuant to D. C. Code § 2-308.15(f) and /or any other applicable provision of law;

b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.   An award of reasonable attorneys' fees and costs; and

d.   Such further relief as this court deems equitable and just.

<u>**COUNT XV**</u>

**(Florida False Claims Act, Fla. Stat. §§ 68.081 et seq. against Defendant Novo Nordisk)**

**256.**   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**257.**   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Florida.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Florida as well.

**258.**   This is a qui tam action brought by Relators and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, West's F.S.A. § 68.081 et seq.

**259.**   West's F.S.A. § 68.082 provides liability for any person who-

a.   Knowingly presents or causes to be presented to an officer or employee of an agency a false claim for payment or approval

b.   Knowingly makes, uses, or causes to be made or used a false record or statement to

68

get a false or fraudulent claim paid or approved by an agency

c.   Conspires to submit a false claim to an agency or to deceive an agency for the

purpose of getting a false or fraudulent claim allowed or paid

**260.**   Defendant Novo Nordisk violated West's F.S.A. § 68.082 from at least 2011 to the

present by engaging in the fraudulent and illegal practices described herein.

**261.**   Defendant Novo Nordisk furthermore violated West's F.S.A. § 68.082 and knowingly

caused thousands of false claims to be made, used and presented to the State of Florida from at

least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback

Act, and the Stark Act, as described herein.

**262.**   The State of Florida, by and through the State of Florida Medicaid program and other

state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal

practices, paid the claims submitted by health care providers and third payers in connection

therewith.

**263.**   Compliance with applicable Medicare, Medicaid and the various other federal and state

laws cited herein was an implied, and upon information and belief, also an express condition of

payment of claims submitted to the State of Florida in connection with Defendant Novo

Nordisk's fraudulent and illegal practices.

**264.**   Had the State of Florida known that Defendant Novo Nordisk was violating the federal

and state laws cited herein, it would not have paid the claims submitted by health care providers

and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal

practices.

**265.**   As a result of Defendant Novo Nordisk's violations of West's F.S.A. § 68.082 the State

of Florida has been damaged in an amount far in excess of millions of dollars exclusive of

interest.

**266.**　　Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to West's F.S.A. § 68.083(2) on behalf of Relators and the State of Florida.

**267.**　　This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida in the operation of its Medicaid program.

**268.**　　Pursuant to the Florida False Claims Act, the State of Florida and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**269.**　　To the STATE OF FLORIDA:

    a.　Three times the amount of actual damages which the State of Florida has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.　A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Florida;

    c.　Prejudgment interest; and

    d.　All costs incurred in bringing this action.

**270.**　　To RELATORS:

    a.　The maximum amount allowed pursuant to West's F.S.A. § 68.085 and /or any other applicable provision of law;

    b.　Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.　An award of reasonable attorneys' fees and costs; and

    d.　Such further relief as this court deems equitable and just.

## COUNT XVI

### (Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 et seq. against

### Defendant Novo Nordisk)

**271.**   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**272.**   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Georgia.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Georgia as well.

**273.**   This is a qui tam action brought by Relators and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168  et seq.

**274.**   Ga. Code Ann. § 49-4-168.1 et seq. provides liability for any person who—

    a.   Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

    b.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

    c.   Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

    d.   Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay, repay or transmit money or property to the State of Georgia.

**275.**   Defendant Novo Nordisk violated Ga. Code Ann. § 49-4-168.1 and knowingly caused

hundreds of thousands of false claims to be made, used and presented to the State of Georgia from 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act, as described herein.

276.    The State of Georgia, by and through the Georgia Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

277.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

278.    Had the State of Georgia known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

279.    As a result of Defendant Novo Nordisk's violations of Ga. Code Ann. § 49-4-168.1, the State of Georgia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

280.    Defendant Novo Nordisk did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

**281.**  Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Ga. Code Ann., § 49-4-168.2(b) on behalf of Relators and the State of Georgia.

**282.**  This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

**283.**  Pursuant to the Georgia State False Medicaid Claims Act, the State of Georgia and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**284.**  To the STATE OF GEORGIA:

    a.  Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.  A civil penalty on not less than $5,500 and not more than $ 11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Georgia;

    c.  Prejudgment interest; and

    d.  All costs incurred in bringing this action.

**285.**  To RELATORS:

    a.  The maximum amount allowed pursuant to Ga. Code Ann., § 49-4-168.2(i), and/ or any other applicable provision of law;

    b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.  An award of reasonable attorneys' fees and costs; and

    d.  Such further relief as this Court deems equitable and just.

## **COUNT XVII**

**(Hawaii False Claims Act, Haw. Rev. Stat. § 661.21 et seq. against Defendant Novo Nordisk)**

286.    Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

287.    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Hawaii.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Hawaii as well.

288.    This is a qui tam action brought by Relators and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661.21 et seq.

289.    Haw. Rev. Stat. § 661-21(a) provides liability for any person who—

    a.   Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

    b.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

    c.   Conspires to defraud the state by getting a false or fraudulent claim allowed or paid; or

    d.   Is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

290.    Defendant Novo Nordisk violated Haw. Rev. Stat. § 661.21(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Hawaii from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback

Act, and Stark Act, as described herein.

**291.**    The State of Hawaii, by and through the Hawaii Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**292.**    Compliance with applicable Medicare, Medicaid and the various other federal state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Hawaii in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**293.**    Had the State of Hawaii known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**294.**    As a result of Defendant Novo Nordisk's violations of Haw. Rev. Stat. § 661-21(a) the State of Hawaii has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**295.**    Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of Relators and the State of Hawaii.

**296.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Hawaii in the operation of its Medicaid program.

**297.**    Pursuant to the Hawaii False Claims Act, the State of Hawaii and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**298.**   To the STATE OF HAWAII:

   a.   Three times the amount of actual damages which the State of Hawaii has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

   b.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Hawaii;

   c.   Prejudgment interest; and

   d.   All costs incurred in bringing this action.

**299.**   To RELATORS:

   a.   The maximum amount allowed pursuant to Haw. Rev. Stat. § 661-27 and /or any other applicable provision of law;

   b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action; and

   c.   Such further relief as this Court deems equitable and just.

<u>**COUNT XVIII**</u>

**(Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 et seq. against**

**Defendant Novo Nordisk)**

**300.**   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**301.**   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Illinois.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Illinois as well.

**302.**   This is a qui tam action brought by Relators and the State of Illinois to recover treble

damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 et seq.

**303.**   740 ILCS 175/3(a) provides liability for any person who—

    a.   Knowingly presents, or causes to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

    b.   Knowingly makes, uses, of causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

    c.   Conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

**304.**   In addition, 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item of service for which payment may be made in whole or in part under the Illinois Medicaid program.

**305.**   Defendant Novo Nordisk violated 305 ILCS 5/8A-3(b) from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**306.**   Defendant Novo Nordisk furthermore violated 740 ILCS 175/3(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Illinois from at least 2011 to the present by its violation of federal and state laws, including 305 ILCS 5/8A-3(b), the Anti-Kickback Act and the Stark Act, as described herein.

**307.**   The State of Illinois, by and through the Illinois Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**308.**   Compliance with applicable Medicare, Medicaid and the various other federal and state

laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Illinois in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

309.    Had the State of Illinois known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

310.    As a result of Defendant Novo Nordisk's violations of 740 ILCS 175/3(a), the State of Illinois has been damaged in an amount far in excess of millions of dollars exclusive of interest.

311.    Relators are private persons with direct and independent knowledge of the allegation of this Complaint, and this action is brought pursuant to 740 ILCS 175/3(b) on behalf of Relators and the State of Illinois.

312.    This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

313.    Pursuant to the Illinois Whistleblower Reward and Protection Act, the State of Illinois and Relator are entitled to the following damages as against Defendant Novo Nordisk:

314.    To the STATE OF ILLINOIS:

  a.  Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

  b.  A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Illinois;

  c.  Prejudgment interest; and

d.  All costs incurred in bringing this action.

315.  To RELATORS:

a.  The maximum amount allowed pursuant to 740 ILCS/4(d) and/or any other applicable provision of law;

b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this Court deems equitable and just.

## COUNT XIX

**(Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 et seq. against Defendant Novo Nordisk)**

316.  Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

317.  This is a claim for treble damages and penalties under the Illinois Insurance Claims Fraud Prevention Act.

318.  By virtue of the acts described above, Defendant Novo Nordisk knowingly offered and/or paid remuneration to physicians to induce the procurement of patients for Defendant's drugs for which Defendant could cause the filing of claims for payment from the patients' insurers. *See* 740 Ill. Comp. Stat. § 92/5(a).

319.  Defendant Novo Nordisk knowingly presented or caused to be presented false or fraudulent claims to the private insurers in Illinois, or for patients in Illinois those insurers covered, for payment or approval in violation of each patient's private health insurance contract.

320.  By virtue of the acts described above, Defendant Novo Nordisk knowingly made, used,

or caused to be made or used false records and statements and omitted material facts to induce the private insurers in Illinois, or for patients in Illinois covered by those insurers, to approve or pay such false and fraudulent claims.

**321.**    By virtue of the acts described above, the Defendant Novo Nordisk conspired to violate the Illinois Insurance Claims Fraud Prevention Act and each patient's private health insurance contract.

**322.**    The private insurers in Illinois, or those insurers that covered patients in Illinois, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be presented by Defendant Novo Nordisk, paid and continue to pay the claims that are non-payable as a result of Defendant's' illegal conduct.

**323.**    Defendant Novo Nordisk knowingly submitted and/or caused to be made or used false records or false statements in order to avoid or decrease their respective obligations to return overpayments to these private insurance companies.

**324.**    By reason of Defendant Novo Nordisk's acts, these private insurance companies have been damaged, and continue to be damaged, in a substantial amount to be determined at trial.

**325.**    Each claim for reimbursement that was a result of the Defendant Novo Nordisk' scheme represents a false or fraudulent record or statement and a false or fraudulent claim for payment.

**326.**    The State of Illinois is entitled to the maximum penalty of $10,000.00 for each and every false or fraudulent claim, record, or statement made, 'used, presented, or caused to be made, used, or presented by Defendant Novo Nordisk.

**327.**    WHEREFORE, Relator requests the following relief:

    a.   That this Court enter judgment against Defendant Novo Nordisk in an amount equal to three times the amount of damages that the private insurance companies have

sustained because of Defendant Novo Nordisk's actions, plus a civil penalty of not less tl1an $5,000,00 and not more than $10,000.00 for each violation of 740 Ill. Comp. Stat. §§ 92/5(a) and (b);

b.  No less than thirty percent (30%) of the proceeds of this action to the Relator if the State of Illinois elects to intervene, and no less than forty percent (40%) if it does not;

c.  Relators' attorneys' fees, litigation and investigation costs, and other related expenses; and

d.  Such other relief as the Court deems just and appropriate.

## COUNT XX

### (Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5 et seq. against Defendant Novo Nordisk)

328.    Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

329.    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Indiana.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Indiana as well.

330.    This is a qui tam action brought by Relators and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5 et seq.

331.    IC 5-11-5.5-2 provides liability for any person who—

a.  presents a false claim to the state for payment or approval;

b.  makes or uses a false record or statement to obtain payment or approval of a false

81

claim from the state;

    c.  with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

    d.  with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;

    e.  receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

    f.  makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

    g.  conspires with another person to perform an act described in subdivisions (a) through (f); or

    h.  causes or induces another person to perform an act described in subdivisions (a) through (f).

332.    In addition, IC 12-15-24-1 & IC 12-15-24-2 prohibits the provision of a kickback or bribe in connection with the furnishing of items or services or the making or receipt of the payment under the Indiana Medicaid program.

333.    Defendant Novo Nordisk violated IC 12-15-24-1 & IC 12-15-24-2 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

334.    Defendant Novo Nordisk furthermore violated IC 5-11-5.5-2 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana from at least 2011 to the present by its violation of federal and state laws, including IC 12-15-24-1 & IC 12-15-24-2, the Anti-Kickback Act and the Stark Act, as described herein.

335.    The State of Indiana, by and through the Indiana Medicaid program and other state health

care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

336.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

337.    Had the State of Indiana known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

338.    As a result of Defendant Novo Nordisk's violations of IC 5-11-5.5-2, the State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

339.    Relators are private persons with direct and independent knowledge of the allegation of this Complaint, and this action is brought pursuant to IC 5-11-5.5-4 on behalf of Relators and the State of Indiana.

340.    This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

341.    Pursuant to the Indiana False Claims and Whistleblower Protection Act, the State of Indiana and Relators are entitled to the following damages as against Defendant Novo Nordisk:

342.    To the STATE OF INDIANA:

   a.   Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

b.  A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Indiana;

c.  Prejudgment interest; and

d.  All costs incurred in bringing this action.

343.  To RELATORS:

a.  The maximum amount allowed pursuant to IC 5-11-5.5-6 and/or any other applicable provision of law;

b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this Court deems equitable and just.

## COUNT XXI

**(Iowa False Claims Act, Iowa Code § 685.1 et seq. against Defendant Novo Nordisk)**

344.  Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

345.  Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.   Defendant Novo Nordisk conducts business in the State of Iowa.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Iowa as well.

346.  This is a qui tam action brought by Relators and the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Act, Iowa Code § 685.1 et seq.

347.  Iowa Code § 685.2 provides liability for any person who—

a.  Knowingly presents, or causes to be presented, a false or fraudulent claim for

payment or approval;

b. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

c. Conspires to commit a violation of paragraphs (a), (b), (d)-(g);

d. Has possession, custody, or control of property or money used, or to be used, by the state and knowingly delivers, or causes to be delivered, less than all of that money or property;

e. Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f. Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, or a member of the Iowa national guard, who lawfully may not sell or pledge property;

g. Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state.

348.    Defendant Novo Nordisk violated Iowa Code § 685.2 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

349.    Defendant Novo Nordisk furthermore violated Iowa Code § 685.2 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Iowa from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act, as described herein.

**350.**   The State of Iowa, by and through the Iowa Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**351.**   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Iowa in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**352.**   Had the State of Iowa known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**353.**   As a result of Defendant Novo Nordisk's violations of Iowa Code § 685.2, the State of Iowa has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**354.**   Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Iowa Code § 685.3(2)(a) on behalf of themselves and the State of Iowa.

**355.**   This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Iowa in the operation of its Medicaid program.

**356.**   Pursuant to the Iowa False Claims Act, the State of Iowa and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**357.**   To the STATE OF IOWA:

    a.   Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.  A civil penalty for each false claim which Defendant Novo Nordisk caused to be presented to the State of Iowa;

    c.  Prejudgment interest; and

    d.  All costs incurred in bringing this action.

**358.**  To RELATORS:

    a.  The maximum amount allowed pursuant to Iowa Code § 685.3(4)(a)(1) and/or any other applicable provision of law;

    b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.  An award of reasonable attorneys' fees and costs; and

    d.  Such further relief as this Court deems equitable and just.

## <u>COUNT XXII</u>

### (Louisiana Medical Assistance Programs Integrity Law, La Rev. Stat. Ann § 437.1 et seq. against Defendant Novo Nordisk)

**359.**  Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**360.**  Additionally Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Louisiana.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Louisiana as well.

**361.**  This is a qui tam action brought by Relators and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, La Rev. Stat. Ann § 437.1 et seq.

362. La. Rev. Stat. Ann. § 438.3 provides –

    a. No person shall knowingly present or cause to be presented a false or fraudulent claim;

    b. No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds;

    c. No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

363. In addition, La. Rev. Stat. Ann.§ 438.2(A) prohibits the solicitation, receipt, offering or payment of any financial inducements, including kickbacks, bribes, rebated, etc., directly or indirectly, overtly or covertly, in cash or in kind, for furnishing health care goods or services paid for in whole or in part by the Louisiana medical assistance programs.

364. Defendant Novo Nordisk violated La. Rev. Stat. Ann § 438.2(A) from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

365. Defendant Novo Nordisk furthermore violated La. Rev. Stat. Ann. § 438.3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Louisiana from at least 2011 to the present by its violation of federal and state laws, including La. Rev. Stat. Ann. § 438.2(A), the Anti-Kickback Act and Stark Act, as described herein.

366. The State of Louisiana, by and through the Louisiana Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

367.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

368.   Had the State of Louisiana known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

369.   As a result of Defendant Novo Nordisk's violations of La. Rev. Stat. Ann. § 438.3 the State of Louisiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

370.   Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to La. Rev. Stat. Ann. § 439.1(A) on behalf of Relators and the State of Louisiana.

371.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

372.   Pursuant to the Louisiana Medical Assistance Programs Integrity Law, the State of Louisiana and Relator are entitled to the following damages as against Defendant Novo Nordisk:

373.   To the STATE OF LOUISIANA:

    a.   Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not more than $10,000 for each false claim which Defendant Novo

Nordisk caused to be presented to the State of Louisiana;

c. Prejudgment interest; and

d. All costs incurred in bringing this action.

**374.** To RELATORS:

a. The maximum amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;

b. Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c. An award or reasonable attorneys' fees and costs; and

d. Such further relief as this Court deems equitable and just.

## COUNT XXIII

**(Maryland Medicaid False Claims Against State Health Plans and State Health Programs Act, Annotated Code of Maryland § 2-601 et seq. against Defendant Novo Nordisk)**

**375.** Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

**376.** Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in the Commonwealth of Maryland. Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Maryland as well.

**377.** This is a qui tam action brought by Relators and the State of Maryland to recover treble damages and civil penalties under the Maryland Medicaid False Claims Against State Health Plans and State Health Programs Act, Annotated Code of Maryland § 2-601 et seq.

**378.** Annotated Code of Maryland § 2-602 provides liability for any person who-

90

a. Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval;

b. Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

c. Conspires to commit a violation under this subtitle;

d. Has possession, custody, or control of money or other property used by or on behalf of the State under a State health plan or a State health program and knowingly delivers or causes to be delivered to the State less than all of that money or other property;

e. Knowingly makes any other false or fraudulent claim against a State health plan or a State health program.

379.    Defendant Novo Nordisk violated the Annotated Code of Maryland § 2-602 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

380.    Defendant Novo Nordisk furthermore violated the Annotated Code of Maryland § 2-602 and knowingly caused thousands of false claims to be made, used and presented to the State of Maryland from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

381.    The State of Maryland, by and through the State of Maryland Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

382.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of

91

payment of claims submitted to the State of Maryland in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

383.    Had the State of Maryland known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

384.    As a result of Defendant Novo Nordisk's violations of the Annotated Code of Maryland § 2-602 the State of Maryland has been damaged in an amount far in excess of millions of dollars exclusive of interest.

385.    Relators have direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to the Annotated Code of Maryland § 2-604 on behalf of Relators and the State of Maryland.

386.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Maryland in the operation of its Medicaid program.

387.    Pursuant to the Maryland Medicaid False Claims Against State Health Plans and State Health Programs Act, the State of Maryland and Relator are entitled to the following damages as against Defendant Novo Nordisk:

388.    To the STATE OF MARYLAND:

   a.    Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

   b.    A civil penalty of not less than the amount of the actual damages the State health plan or State health program incurs as a result of the violation, and not more than $10,000

for each false claim which Defendant Novo Nordisk caused to be presented to the State of Maryland;

c.  Prejudgment interest; and

d.  All costs incurred in bringing this action.

389.   To RELATORS:

a.  The maximum amount allowed pursuant to the Annotated Code of Maryland § 2-605 and /or any other applicable provision of law;

b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this court deems equitable and just.

## COUNT XXIV

**(Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap 12 § 5(A) et seq. against Defendant Novo Nordisk)**

390.   Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

391.   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the Commonwealth of Massachusetts.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Massachusetts as well.

392.   This is a qui tam action brought by Relators and the State of Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap 12 § 5(A) et seq.

93

**393.**  Mass. Gen. Laws Ann. Chap 12 § 5B provides liability for any person who—

 a.  Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

 b.  Knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

 c.  Conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

 d.  Is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reason able time after discovery of the false claim.

**394.**  In addition, Mass. Gen. Laws Ann. Chap. 118E § 41 prohibits the solicitation, receipt or offering of any remuneration, including any bribe ore rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Massachusetts Medicaid program.

**395.**  Defendant Novo Nordisk violated Mass. Gen. Laws Ann. Chap. 118E § 41 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**396.**  Defendant Novo Nordisk furthermore violated Mass. Gen. Laws Ann. Chap 12 § 5B and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Massachusetts from at least 2011 to the present by its violation of federal and state laws, including Mass. Gen. Laws Ann. Chap. 118E § 41, the Anti-Kickback Act and the Stark Act, as described herein.

397.    The State of Massachusetts, by and through the Massachusetts Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

398.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Massachusetts in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

399.    Had the State of Massachusetts known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

400.    As a result of Defendant Novo Nordisk's violations of Mass. Gen. Laws Ann. Chap. 12 § 5B the State of Massachusetts has been damaged in an amount far in excess of millions of dollars exclusive of interest.

401.    Relators are private persons with direct and independent knowledge of the allegations of the Complaint, this action is brought pursuant to Mass. Gen. Laws Ann Chap. 12 § 5(c)(2) on behalf of themselves and the State of Massachusetts.

402.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of Massachusetts in the operation of its Medicaid program.

403.    Pursuant to the Massachusetts False Claims Act, the State of Massachusetts and Relator are entitled to the following damages as against Defendant Novo Nordisk:

404.   To the STATE OF MASSACHUSETTS:

    a.   Three times the amount of actual damages which that State of Massachusetts has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Massachusetts;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

405.   To RELATORS:

    a.   The maximum amount allowed pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5F and/or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.   An award of reasonable attorneys' fees and costs; and

    d.   Such further relief as this court deems equitable and just.

## COUNT XXV

**(Michigan Medicaid False Claim Act, M.C.L.A. 400.601 et seq. against Defendant Novo Nordisk)**

406.   Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

407.   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in Michigan. Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Michigan as well.

**408.** This is a qui tam action brought by Relators and the State of Michigan for treble damages and penalties under Michigan Medicaid False Claim Act, M.C.L.A. 400.601 et seq.

**409.** M.C.L.A. 400.607 provides liability for any person who, among other things—

    a. Causes to be made or presented to an employee or officer of this state a claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws, upon or against the state, knowing the claim to be false.

    b. Presents or causes to be made or presented a claim under the social welfare act, Act No. 280 of the Public Acts of 1939, which he or she knows falsely represents that the goods or services for which the claim is made were medically necessary in accordance with professionally accepted standards.

**410.** In addition, M.C.L.A. 400.604 prohibits the solicitation, receipt or offering of a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made in whole or in part pursuant to the Michigan Medicaid program.

**411.** Defendant Novo Nordisk violated M.C.L.A. 400.604 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**412.** Defendant Novo Nordisk furthermore violated M.C.L.A. 400.607 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Michigan from at least 2011 to the present by its violation of federal and state laws, including M.C.L.A. 400.604, the Anti-Kickback Act and the Stark Act, as described herein.

**413.** The State of Michigan, by and through the Michigan Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection

97

therewith.

**414.** Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**415.** Had the State of Michigan known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**416.** As a result of Defendant Novo Nordisk's violations of M.C.L.A. 400.607 the State of Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**417.** Relators are private persons with direct and independent knowledge of the allegations of the Complaint, and this action is brought pursuant to M.C.L.A. 400.610a on behalf of themselves and the State of Michigan.

**418.** This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

**419.** Pursuant to the Michigan Medicaid False Claim Act, the State of Michigan and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**420.** To the STATE OF MICHIGAN:

    a. Three times the amount of actual damages which that State of Michigan has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

b.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Michigan;

c.   Prejudgment interest; and

d.   All costs incurred in bringing this action.

421.   To RELATORS:

a.   The maximum amount allowed pursuant to M.C.L.A. 400.610a(9) and/or any other applicable provision of law;

b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.   An award of reasonable attorneys' fees and costs; and

d.   Such further relief as this court deems equitable and just.

## COUNT XXVI

**(Minnesota False Claims Act, (Minnesota Statutes § 15C.01 et seq. against Defendant Novo Nordisk)**

**422.**     Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

**423.**     Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in Minnesota.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Minnesota as well.

**424.**     This is a qui tam action brought by Relators and the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, Minnesota Statutes § 15C.01 et seq.

**425.**     Minnesota Statutes § 15C.02 provides liability for any person who-

 a.   Knowingly presents, or causes to be presented, to an officer or employee of the state or a political subdivision a false or fraudulent claim for payment or approval;

 b.   Knowingly makes or uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a political subdivision;

 c.   Knowingly conspires to either present a false or fraudulent claim to the state or a political subdivision for payment or approval or makes, uses, or causes to be made or used a false record or statement to obtain payment or approval of a false or fraudulent claim.

**426.**     Defendant Novo Nordisk violated Minnesota Statutes § 15C.02 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**427.**     Defendant Novo Nordisk furthermore violated Minnesota Statutes § 15C.02 and knowingly caused thousands of false claims to be made, used and presented to the State of Minnesota from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

**428.**     The State of Minnesota, by and through the State of Minnesota Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

**429.**     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Minnesota in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**430.**     Had the State of Minnesota known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**431.**     As a result of Defendant Novo Nordisk's violations of Minnesota Statutes § 15C.02 the State of Minnesota has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**432.**     Relators have direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Minnesota Statutes § 15C.05 on behalf of themselves and the State of Minnesota.

**433.**     This Court is requested to accept supplemental jurisdiction of this related state claim as it

101

is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Minnesota in the operation of its Medicaid program.

**434.** Pursuant to the Minnesota False Claims Act, the State of Minnesota and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**435.** To the STATE OF MINNESOTA:

    a.   Three times the amount of actual damages which the State of Minnesota has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,500, and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Minnesota;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

**436.** To RELATORS:

    a.   The maximum amount allowed pursuant to Minnesota Statutes § 15C.12 and § 15C.13 and /or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.   An award of reasonable attorneys' fees and costs; and

    d.   Such further relief as this court deems equitable and just.

<u>**COUNT XXVII**</u>

**(Missouri Health Care Payment Fraud and Abuse Act, Missouri Revised Statutes § 191.900 et seq. against Defendant Novo Nordisk)**

**437.** Relators re-allege and incorporate the allegations above as if fully set forth herein and

further allege as follows.

**438.**     Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Missouri.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Missouri as well.

**439.**     This is a qui tam action brought by Relators and the State of Missouri to recover treble damages and civil penalties under the Missouri Health Care Payment Fraud And Abuse Act, Missouri Revised Statutes § 191.900 et seq.

**440.**     The Missouri Health Care Payment Fraud And Abuse Act § 191-905(1) provides liability for any person -

    a.   Knowingly presenting to a health care payer a claim for a health care payment that falsely represents that the health care for which the health care payment is claimed was medically necessary, if in fact it was not;

    b.   Knowingly concealing the occurrence of any event affecting an initial or continued right under a medical assistance program to have a health care payment made by a health care payer for providing health care;

    c.   Knowingly concealing or failing to disclose any information with the intent to obtain a health care payment to which the health care provider or any other health care provider is not entitled, or to obtain a health care payment in an amount greater than that which the health care provider or any other health care provider is entitled;

    d.   Knowingly presenting a claim to a health care payer that falsely indicates that any particular health care was provided to a person or persons, if in fact health care of lesser value than that described in the claim was provided.

**441.**   The Missouri Health Care Payment Fraud And Abuse Act § 191-905(2) provides liability if any person shall knowingly solicit or receive any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for -

    a.   Referring another person to a health care provider for the furnishing or arranging for the furnishing of any health care; or

    b.   Purchasing, leasing, ordering or arranging for or recommending purchasing, leasing or ordering any health care.

**442.**   The Missouri Health Care Payment Fraud And Abuse Act § 191-905(3) provides liability if any person shall knowingly offer or pay any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind, to any person to induce such person to refer another person to a health care provider for the furnishing or arranging for the furnishing of any health care.

**443.**   Defendant Novo Nordisk violated the Missouri Health Care Payment Fraud and Abuse Act § 191-905(1) & (2) & (3) from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**444.**   Defendant Novo Nordisk furthermore violated Missouri Health Care Payment Fraud And Abuse Act § 191-905(1) & (2) & (3) and knowingly caused thousands of false claims to be made, used and presented to Missouri from at least 2011 to the present by its violation of federal and state laws, including Missouri Revised Statutes § 191-905(3), the Anti-Kickback Act and Stark Act Requirements, as described herein.

**445.**   Missouri, by and through the Missouri Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

104

**446.**    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to Missouri in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**447.**    Had the State of Missouri known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**448.**    As a result of Defendant Novo Nordisk's violations of § 191-905(1) & (2) & (3), the State of Missouri has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**449.**    Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Missouri Revised Statutes § 191.907 on behalf of Relators and the State of Missouri.

**450.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Missouri in the operation of its Medicaid program.

**451.**    Pursuant to the Missouri Health Care Payment Fraud And Abuse Act, the State of Missouri and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**452.**    To the STATE OF MISSOURI:

   a.   Three times the amount of actual damages which the State of Missouri has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

   b.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim

which Defendant Novo Nordisk caused to be presented to the State of Missouri;

c.  Prejudgment interest; and

d.  All costs incurred in bringing this action.

**453.**   To RELATORS:

a.  The maximum amount allowed pursuant to Missouri Revised Statutes § 191.907 and /or any other applicable provision of law;

b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c.  An award of reasonable attorneys' fees and costs; and

d.  Such further relief as this court deems equitable and just.

## COUNT XXVIII

**(Montana False Claims Act, MT ST 17-8-401 et seq. against Defendant Novo Nordisk)**

**454.**   Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

**455.**   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in Montana.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Montana as well.

**456.**   This is a qui tam action brought by Relators and the State of Montana for treble damages and penalties under Montana False Claims Act, MT ST 17-8-401 et seq.

**457.**   MT ST 17-8-403 provides liability for any person who—

    a.   knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

    b.   knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

    c.   conspiring to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity.

**458.**   In addition, MT ST 45-6-313 prohibits the solicitation, receipt or offering any remuneration, including but not limited to a kickback, bribe, or rebate, other than an amount legally payable under the medical assistance program, for furnishing services or items for which payment may be made under the Montana Medicaid program.

**459.**   Defendant Novo Nordisk violated MT ST 45-6-313 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**460.**     Defendant Novo Nordisk furthermore violated MT ST 17-8-403 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Montana from at least 2011 to the present by its violation of federal and state laws, including MT ST 45-6-313, the Anti-Kickback Act and the Stark Act, as described herein.

**461.**     The State of Montana, by and through the Montana Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**462.**     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Montana in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**463.**     Had the State of Montana known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**464.**     As a result of Defendant Novo Nordisk's violations of MT ST 17-8-403 the State of Montana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**465.**     Relators are private persons with direct and independent knowledge of the allegations of the Complaint, and this action is brought pursuant to MT ST 17-8-406 on behalf of Relators and the State of Montana.

**466.**     This Court is requested to accept supplemental jurisdiction of this related state claim as it

is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of Montana in the operation of its Medicaid program.

467.    Pursuant to the Montana False Claims Act, the State of Montana and Relator are entitled to the following damages as against Defendant Novo Nordisk:

468.    To the STATE OF MONTANA:

    a.    Three times the amount of actual damages which that State of Montana has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.    A civil penalty of between $5,500 and $11,000 (adjusted for inflation) for each false claim which Defendant Novo Nordisk caused to be presented to the State of Montana;

    c.    Prejudgment interest; and

    d.    All costs incurred in bringing this action.

469.    To RELATORS:

    a.    The maximum amount allowed pursuant to MT ST 17-8-410 and/or any other applicable provision of law;

    b.    Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.    An award of reasonable attorneys' fees and costs; and

    d.    Such further relief as this Court deems equitable and just.

## COUNT XXIX

**(Nevada False Claims Act, N.R.S. § 357.010 et seq. against Defendant Novo Nordisk)**

470.    Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

471.    Additionally, Relators state that the course of conduct described in this Complaint was a

nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Nevada.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Nevada as well.

**472.**   This is a qui tam action brought by Relators and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010 et. seq.

**473.**   N.R.S. § 357.040(1) provides liability for any person who—

    a.   Knowingly presents or causes to be presented a false claim for payment or approval;

    b.   Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim;

    c.   Conspires to defraud by obtaining allowance or payment of a false claim;

    d.   Is a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, fails to disclose the falsity to the state or political subdivision within a reasonable time.

**474.**   In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made in whole or in part under the Nevada Medicaid program.

**475.**   Defendant Novo Nordisk violated N.R.S. § 422.560 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**476.**   Defendant Novo Nordisk furthermore violated N.R.S. § 357.040(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada from at least 2011 to the present by its violation of federal and state laws, including N.R.S. § 422.560, the Anti-Kickback Act and the Stark Act, as described herein.

**477.**   The State of Nevada, by and through the Nevada Medicaid program and other health care

programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**478.**     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Nevada in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**479.**     Had the State of Nevada known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**480.**     As a result of Defendant Novo Nordisk's violations of N.R.S. § 357.040(1) the State of Nevada has been damaged in an amount far in excess or millions of dollars exclusive of interest.

**481.**     Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to N.R.S. § 357.080(1) on behalf of Relators and the State of Nevada.

**482.**     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

**483.**     Pursuant to the Nevada False Claims Act, the State of Nevada and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**484.**     To the STATE OF NEVADA:

     a.   Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

b. A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Nevada;

c. Prejudgment interest; and

d. All costs incurred in bringing this action.

485.   To RELATORS:

a. The maximum amount allowed pursuant to N.R.S § 357.210 and/or any other applicable provision of law;

b. Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c. An award of reasonable attorneys' fees and costs; and

d. Such further relief as this Court deems equitable and just.

## COUNT XXX

**(New Jersey False Claims Act, N.J.S.A. 2A:32C-1 et seq. against Defendant Novo Nordisk)**

486.   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

487.   Additionally, Defendant Novo Nordisk conducts business in the New Jersey.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in New Jersey as well.

488.   This is a qui tam action brought by Relators and the State of New Jersey for treble damages and penalties under New Jersey False Claims Act, N.J.S.A. 2A:32C-1 et seq.

489.   N.J.S.A. 2A:32C-3 provides liability for any person who—

a. Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or

fraudulent claim for payment or approval;

    b.   Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

    c.   Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

**490.**   In addition, N.J.S.A. 30:4D-17 prohibits solicitation, offers, or receipt of any kickback, rebate or bribe in connection with the furnishing of items or services for which payment is or may be made in whole or in part under the New Jersey Medicaid program, or the furnishing of items or services whose cost is or may be reported in whole or in part in order to obtain benefits or payments under New Jersey Medicaid.

**491.**   Defendant Novo Nordisk violated N.J.S.A. 30:4D-17 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**492.**   Defendant Novo Nordisk furthermore violated N.J.S.A. 2A:32C-3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada from at least 2011 to the present by its violation of federal and state laws, including N.J.S.A. 30:4D-17, the Anti-Kickback Act and the Stark Act, as described herein.

**493.**   The State of New Jersey, by and through the New Jersey Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**494.**   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Jersey in connection with Defendant Novo

Nordisk's fraudulent and illegal practices.

**495.**    Had the State of New Jersey known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**496.**    As a result of Defendant Novo Nordisk's violations of N.J.S.A. 2A:32C-3 the State of New Jersey has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**497.**    Relators are private persons with direct and independent knowledge of the allegations of the Complaint, and this action is brought pursuant to N.J.S.A. 2A:32C-5 on behalf of Relators and the State of New Jersey.

**498.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

**499.**    Pursuant to the New Jersey False Claims Act, the State of New Jersey and Relator are entitled to the following damages as against Defendant Novo Nordisk:

**500.**    To the STATE OF NEW JERSEY:

    a.   Three times the amount of actual damages which that State of New Jersey has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of New Jersey;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

**501.**   To RELATORS:

    a.   The maximum amount allowed pursuant to N.J.S.A. 2A:32C-7and/or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.   An award of reasonable attorneys' fees and costs; and

    d.   Such further relief as this Court deems equitable and just.

**COUNT XXXI**

**(New Mexico Medicaid False Claims Act, and New Mexico Fraud Against Taxpayers Act, N. M. S. A. 1978, § 27-14-1 et seq., and N. M. S. A. 1978, § 44-9-1 et seq. against Defendant Novo Nordisk)**

**502.**   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**503.**   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in the State of New Mexico.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of New Mexico as well.

**504.**   This is a qui tam action brought by Relators and the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N. M. S. A. 1978, § 27-14-1 et seq. and the New Mexico Fraud Against Taxpayers Act, N. M. S. A. 1978, § 44-9-1 et seq.

**505.**   N. M. S. A. 1978, § 27-14-4 provides liability for any person who-

    a.   Presents, or causes to be presented, to the state a claim for payment under the

115

Medicaid program knowing that the person receiving a Medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program;

b.  Makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

c.  Conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent.

506. N.M.S.A. 1978 § 44-9-3 provides liability for any person who-

a.  knowingly presents, or causes to be presented, to an employee, officer or agent of the state or to a contractor, grantee or other recipient of state funds a false or fraudulent claim for payment or approval;

b.  knowingly makes or uses, or causes to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;

c.  conspires to defraud the state by obtaining approval or payment on a false or fraudulent claim;

d.  conspires to make, use or cause to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

507. Defendant Novo Nordisk violated N. M. S. A. 1978, § 27-14-4 and N.M.S.A. 1978 § 44-9-3 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

508. Defendant Novo Nordisk furthermore violated N. M. S. A. 1978, § 27-14-4 and N.M.S.A.

1978 § 44-9-3 and knowingly caused thousands of false claims to be made, used and presented to the State of New Mexico from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and Stark Act, as described herein.

**509.**   The State of New Mexico, by and through the State of New Mexico Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

**510.**   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**511.**   Had the State of New Mexico known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**512.**   As a result of Defendant Novo Nordisk's violations of N. M. S. A. 1978, § 27-14-4 and N.M.S.A. 1978 § 44-9-3 the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**513.**   Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to N. M. S. A. 1978, § 27-14-7 and N. M. S. A. 1978, § 44-9-5 on behalf of Relators and the State of New Mexico.

**514.**   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage

to the State of New Mexico in the operation of its Medicaid program.

515.    Pursuant to the New Mexico Medicaid False Claims Act and the New Mexico Fraud Against Taxpayers Act, the State of New Mexico and Relators are entitled to the following damages as against Defendant Novo Nordisk:

516.    To the STATE OF NEW MEXICO:

    a.   Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of New Mexico;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

517.    To RELATORS:

    a.   The maximum amount allowed pursuant to N. M. S. A. 1978, § 27-14-9 and N. M. S. A. 1978, § 44-9-7 and /or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.   An award of reasonable attorneys' fees and costs; and

    d.   Such further relief as this court deems equitable and just.

## COUNT XXXII

**(New York False Claims Act, N.Y. State Fin. Law § 187 et seq. against Defendant Novo Nordisk)**

**518.**    Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**519.**    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in the New York.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in New York as well.

**520.**    This is a qui tam action brought by Relators and the State of New York for treble damages and penalties under New York False Claims Act, N.Y. State Finance Law § 187 et seq.

**521.**    N.Y. State Finance Law § 189 provides liability for any person who—

    a.  Knowingly presents, or causes to be presented, to any employee, officer or agent of the state or a local government, a false or fraudulent claim for payment or approval;

    b.  Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government;

    c.  Conspires to defraud the state or a local government by getting a false or fraudulent claim allowed or paid.

**522.**    Defendant Novo Nordisk violated § 189 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**523.**    Defendant Novo Nordisk furthermore violated § 189 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act

119

and the Stark Act, as described herein.

**524.**    The State of New York, by and through the New York Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**525.**    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**526.**    Had the State of New York known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**527.**    As a result of Defendant Novo Nordisk's violations of § 189 the State of New York has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**528.**    Relators are private persons with direct and independent knowledge of the allegations of the Complaint, and this action is brought pursuant to N.Y. State Finance Law § 190(2) on behalf of Relators and the State of New York.

**529.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of New York in the operation of its Medicaid program.

**530.**    Pursuant to the New York False Claims Act, the State of New York and Relators are entitled to the following damages as against Defendant Novo Nordisk:

531. To the STATE OF NEW YORK:

    a.   Three times the amount of actual damages which that State of New York has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $6,000 and not more than $12,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of New York;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

532. To RELATORS:

    a.   The maximum amount allowed pursuant to N.Y. State Finance Law § 190(6) and/or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.   An award of reasonable attorneys' fees and costs; and

    d.   Such further relief as this Court deems equitable and just.

## COUNT XXXIII

**(North Carolina False Claims Act, North Carolina General Statutes § 51-1-605 et seq. against Defendant Novo Nordisk)**

533. Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

534. Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in the State of North Carolina. Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of North Carolina as well.

535.    This is a qui tam action brought by Relators and the State of North Carolina to recover treble damages and civil penalties under the North Carolina False Claims Act, North Carolina General Statutes § 51-1-605 et seq.

536.    North Carolina General Statutes § 51-1-607 provides liability for any person who-

    a.   Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval

    b.   Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    c.   Conspires to commit a violation of subdivisions of this section.

537.    Defendant Novo Nordisk violated North Carolina General Statutes § 51-1-607 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

538.    Defendant Novo Nordisk furthermore violated North Carolina General Statutes § 51-1-607 and knowingly caused thousands of false claims to be made, used and presented to the State of North Carolina from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

539.    The State of North Carolina, by and through the State of North Carolina Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

540.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of North Carolina in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

541.    Had the State of North Carolina known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

542.    As a result of Defendant Novo Nordisk's violations of North Carolina General Statutes § 51-1-607 the State of North Carolina has been damaged in an amount far in excess of millions of dollars exclusive of interest.

543.    Relators have direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to North Carolina General Statutes § 51-1-608 on behalf of Relators and the State of North Carolina.

544.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of North Carolina in the operation of its Medicaid program.

545.    Pursuant to the North Carolina False Claims Act, the State of North Carolina and Relators are entitled to the following damages as against Defendant Novo Nordisk:

546.    To the STATE OF NORTH CAROLINA:

   a.   Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

   b.   A civil penalty of not less than $5,500, and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of North Carolina;

   c.   Prejudgment interest; and

   d.   All costs incurred in bringing this action.

123

**547.** To RELATORS:

    a.  The maximum amount allowed pursuant to North Carolina General Statutes § 51-1-610 and /or any other applicable provision of law;

    b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.  An award of reasonable attorneys' fees and costs; and

    d.  Such further relief as this court deems equitable and just.

## COUNT XXXIV

### (Oklahoma Medicaid False Claims Act, 63 Okl. St. Ann. § 5053 et seq. against Defendant Novo Nordisk)

**548.**    Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**549.**    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Oklahoma.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Oklahoma as well.

**550.**    This is a qui tam action brought by Relators and the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, 63 Okl. St. Ann. § 5053 et seq.

**551.**    63 Okl. St. Ann. § 5053.1 provides liability for any person who-

    a.   Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

    b.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

    c.   Conspires to defraud the state by getting a false or fraudulent claim allowed or paid.

**552.**    In addition, 56 Okl. St. Ann. § 1005 prohibits solicitation or acceptance of a benefit, pecuniary benefit, or kickback in connection with goods or services paid or claimed by a provider to be payable by the Oklahoma Medicaid Program.

**553.**    Defendant Novo Nordisk violated 56 Okl. St. Ann. § 1005 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**554.** Defendant Novo Nordisk furthermore violated 63 Okl. St. Ann. § 5053.1 and knowingly caused thousands of false claims to be made, used and presented to the State of Oklahoma from at least 2011 to the present by its violation of federal and state laws, including 56 Okl. St. Ann. § 1005, the Anti-Kickback Act, and Stark Act, as described herein.

**555.** The State of Oklahoma, by and through the State of Oklahoma Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

**556.** Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Oklahoma in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**557.** Had the State of Oklahoma known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**558.** As a result of Defendant Novo Nordisk's violations of 63 Okl. St. Ann. § 5053.1 the State of Oklahoma has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**559.** Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to 63 Okl. St. Ann. § 5053.2(B) on behalf of Relators and the State of Oklahoma.

**560.** This Court is requested to accept supplemental jurisdiction of this related state claim as it

is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

**561.** Pursuant to the Oklahoma Medicaid False Claims Act, the State of Oklahoma and Relators are entitled to the following damages as against Defendant Novo Nordisk:

**562.** To the STATE OF OKLAHOMA:

    a.  Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.  A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Oklahoma;

    c.  Prejudgment interest; and

    d.  All costs incurred in bringing this action.

**563.** To RELATORS:

    a.  The maximum amount allowed pursuant 63 Okl. St. Ann. § 5053.4 and /or any other applicable provision of law;

    b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.  An award of reasonable attorneys' fees and costs; and

    d.  Such further relief as this court deems equitable and just.

<u>**COUNT XXXV**</u>

**(Rhode Island False Claims Act, Gen. Laws 1956, § 9-1.1-1 et seq. against Defendant Novo Nordisk)**

**564.** Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

127

565.    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Rhode Island.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Rhode Island as well.

566.    This is a qui tam action brought by Relators and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island False Claims Act, Gen. Laws 1956, § 9-1.1-1 et seq.

567.    Gen. Laws 1956, § 9-1.1-3 provides liability for any person who-

   a.   knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

   b.   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

   c.   conspires to defraud the state by getting a false or fraudulent claim allowed or paid.

568.    In addition, Gen. Laws 1956, § 40-8.2-3 prohibits the solicitation, receipt, offer, or payment of any remuneration, including any kickback, bribe, or rebate, directly or indirectly, in cash or in kind, to induce referrals from or to any person in return for furnishing of services or merchandise or in return for referring an individual to a person for the furnishing of any services or merchandise for which payment may be made, in whole or in part, under the Rhode Island Medicaid program.

569.    Defendant Novo Nordisk violated Gen. Laws 1956, § 40-8.2-3 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

570.    Defendant Novo Nordisk furthermore violated Gen. Laws 1956, § 9-1.1-3 and knowingly caused thousands of false claims to be made, used and presented to the State of Rhode Island

from at least 2011 to the present by its violation of federal and state laws, including Gen. Laws 1956, § 40-8.2-3, the Anti-Kickback Act, and Stark Act, as described herein.

**571.**   The State of Rhode Island, by and through the State of Rhode Island Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

**572.**   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**573.**   Had the State of Rhode Island known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**574.**   As a result of Defendant Novo Nordisk's violations of Gen. Laws 1956, § 9-1.1-3 the State of Rhode Island has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**575.**   Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Gen. Laws 1956, § 9-1.1-4(b) on behalf of Relators and the State of Rhode Island.

**576.**   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

**577.**    Pursuant to the Rhode Island False Claims Act, the State of Rhode Island and Relators are entitled to the following damages as against Defendant Novo Nordisk:

**578.**    To the STATE OF RHODE ISLAND:

    a.    Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Rhode Island;

    c.    Prejudgment interest; and

    d.    All costs incurred in bringing this action.

**579.**    To RELATORS:

    a.    The maximum amount allowed pursuant Gen. Laws 1956, § 9-1.1-4(d) and /or any other applicable provision of law;

    b.    Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.    An award of reasonable attorneys' fees and costs; and

    d.    Such further relief as this court deems equitable and just.

**COUNT XXXVI**

**(Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 et seq. against**

**Defendant Novo Nordisk)**

**580.**    Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

**581.**    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in

the State of Tennessee.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in Tennessee as well.

582.    This is a qui tam action brought by Relators and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 et seq.

583.    Section 71-5-182(a)(1) provides liability for any person who—

    a.  Presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

    b.  Makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for and approved by the state knowing such record or statement is false;

    c.  Conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

584.    Defendant Novo Nordisk violated Tenn. Code Ann. § 71-5-182(a)(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Tennessee from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act, as described herein.

585.    The State of Tennessee, by and through the Tennessee Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

586.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of

131

payment of claims submitted to the State of Tennessee in connection with Defendant Novo

Nordisk's fraudulent and illegal practices.

**587.**    Had the State of Tennessee known that Defendant Novo Nordisk violated the federal and

state laws cited herein, it would not have paid the claims submitted by health care providers and

third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**588.**    As a result of Defendant Novo Nordisk's violations of Tenn. Code Ann. § 71-5-

182(a)(1), the State of Tennessee has been damaged in an amount far in excess of millions of

dollars exclusive of interest.

**589.**    Relators are private persons with direct and independent knowledge of the allegations of

this Complaint, and this action is brought pursuant to Tenn. Code Ann. § 71-5-183(a)(1) on

behalf of Relators and the State of Tennessee.

**590.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it

is predicated upon the exact same facts as the federal claim, and merely asserts separate damage

to the State of Tennessee in the operation of its Medicaid program.

**591.**    Pursuant to the Tennessee Medicaid False Claims Act, the State of Tennessee and

Relators are entitled to the following damages as against Defendant Novo Nordisk:

**592.**    To the STATE OF TENNESSEE:

a.    Three times the amount of actual damages which the State of Tennessee has sustained

as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

b.    A civil penalty of not less than $5,000 and not more than $25,000 for each false claim

which Defendant Novo Nordisk caused to be presented to the State of Tennessee;

c.    Prejudgment interest; and

d.    All costs incurred in bringing this action.

593.   To RELATORS:

    a.   The maximum amount allowed to Tenn. Code Ann. §71-5-183(d) and/or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.   An award of reasonable attorneys' fees and costs; and

    d.   Such further relief as this Court deems equitable and just.

## COUNT XXXVII

**(Texas False Claims Act, V.T.C.A. Hum. Res. Code § 36.001 et seq. against Defendant Novo Nordisk)**

594.   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

595.   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Texas.  Defendant Novo Nordisk's actions described herein occurred in Texas as well.

596.   This is a qui tam action brought by Relators and the State of Texas to recover double damages and civil penalties under the Texas False Claims Act, V.T.C.A. Hum. Res. Code § 36.001 et seq.

597.   V.T.C.A. Hum. Res. Code § 36.002, in relevant part, provides liability for any person who—

    a.   knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid

133

program that is not authorized or that is greater than the benefit or payment that is authorized;

b.  knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

c.  knowingly applies for and receives a benefit or payment on behalf of another person under the Medicaid program and converts any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received;

d.  except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

e.  except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

f.  knowingly enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent;

g.  knowingly makes, uses, or causes the making or use of a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to this

state under the Medicaid program.

**598.**   Defendant Novo Nordisk violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Texas from at least 2011 to the present by its violation of federal and state laws, including, the Anti-Kickback Act and the Stark Act, as described herein.

**599.**   The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

**600.**   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**601.**   Had the State of Texas known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**602.**   As a result of Defendant Novo Nordisk's violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**603.**   Defendant Novo Nordisk did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for

135

reimbursement at issue.

604.   Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of Relators and the State of Texas.

605.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

606.   Pursuant to the Texas False Claims Act, the State of Texas and Relators are entitled to the following damages as against Defendant Novo Nordisk:

607.   To the STATE OF TEXAS:

   a.   Damages at two times the value of any payment or monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful acts set forth above, as provided by the Texas Human Resources Code § 36.052(a)(3) & (4), and

   b.   A civil penalty of: (1) Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $15,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $15,000, for each unlawful act committed by the person that results in injury to an elderly person, as defined by Section 48.002(a)(1), a disabled person, as defined by Section 48.002(a)(8)(A), or a person younger than 18 years of age; or (2) Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $11,000 or the maximum amount imposed as provided by 31 U.S.C. Section

3729(a), if that amount exceeds $11,000, for each unlawful act committed by the person that does not result in injury to a person described by Paragraph (A)

c. Pre- and post-judgment interest, Tex. Hum. Res. Code § 36.052(a)(2).

**608.** To RELATORS:

a. The maximum amount allowed pursuant to V.T.C.A. Hum Res. Code § 36.110(a), and/or any other applicable provision of law;

b. Reimbursement for reasonable expenses and costs which Relators incurred in connection with this action, Tex. Hum. Res. Code §§ 36.007 & 36.110(c);

c. Reasonable attorneys' fees which Relators necessarily incurred in bringing and pressing this case, Tex. Hum. Res. Code §§ 36.007 & 36.110(c); and

d. Such further relief as this Court deems equitable and just.

## COUNT XXXVIII

### (Vermont False Claims Act, 32 V.S.A. 630 et seq. against Defendant Novo Nordisk)

**609.** Relators re-allege and incorporate the allegations above as if fully set forth herein and further allege as follows.

**610.** Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk. Defendant Novo Nordisk conducts business in the State of Vermont. Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Vermont as well.

**611.** This is a qui tam action brought by Relators and the State of Vermont to recover treble damages and civil penalties under the Vermont False Claims Act, 32 V.S.A. 630 *et seq*.

**612.** 32 V.S.A. 631 provides liability for any person who shall-

a. Knowingly present, or cause to be presented, a false or fraudulent claim for payment

137

or approval.

    b.  Knowingly make, use, or cause to be made or used, a false record or statement

        material to a false or fraudulent claim.

    c.  Conspires to commit a violation of this subsection.

**613.**    Defendant Novo Nordisk violated 32 V.S.A. 630 *et seq.* from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**614.**    Defendant Novo Nordisk furthermore violated 32 V.S.A. 630 *et seq.* and knowingly caused thousands of false claims to be made, used and presented to the State of Vermont from at least 2011 to the present by its violation of federal and state laws, including 32 V.S.A. 630 *et seq.*, the Anti-Kickback Act, and Stark Act, as described herein.

**615.**    The State of Vermont, by and through the State of Vermont Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

**616.**    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Vermont in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**617.**    Had the State of Vermont known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third-party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**618.**    As a result of Defendant Novo Nordisk's violations of 32 V.S.A. 630 *et seq.* the State of

Vermont has been damaged in an amount far in excess of millions of dollars exclusive of interest.

619.    Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to 32 V.S.A. 632(b)(1) on behalf of Relators and the State of Vermont.

620.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Vermont in the operation of its Medicaid program.

621.    Pursuant to the Vermont False Claims Act, the State of Vermont and Relators are entitled to the following damages as against Defendant Novo Nordisk:

622.    To the STATE OF VERMONT:

    a.  Three times the amount of actual damages which the State of Vermont has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.  A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the State of Vermont;

    c.  Prejudgment interest; and

    d.  All costs incurred in bringing this action.

623.    To RELATORS:

    a.  The maximum amount allowed pursuant 32 V.S.A. 635(b) and /or any other applicable provision of law;

    b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.  An award of reasonable attorneys' fees and costs; and

d.   Such further relief as this court deems equitable and just.

## COUNT XXXIX

### (Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1et seq. against Defendant Novo Nordisk)

**624.**   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

**625.**   Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the Commonwealth of Virginia.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the Commonwealth of Virginia as well.

**626.**   This is a qui tam action brought by Relators and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 et seq.

**627.**   Va. Code Ann. § 8.01-216.3 provides liability for any person who-

a.   Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;

b.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth

c.   Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid.

**628.**   Defendant Novo Nordisk violated Va. Code Ann. § 8.01-216.3 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

**629.**   Defendant Novo Nordisk furthermore violated Va. Code Ann. § 8.01-216.3 and

knowingly caused thousands of false claims to be made, used and presented to the Commonwealth of Virginia from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act and Stark Act, as described herein.

630.    The Commonwealth of Virginia, by and through the Commonwealth of Virginia Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

631.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

632.    Had the Commonwealth of Virginia known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

633.    As a result of Defendant Novo Nordisk's violations of Va. Code Ann. § 8.01-216.3 the Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

634.    Relators are private persons with direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Va. Code Ann. § 8.01-216.5(A) on behalf of himself and the Commonwealth of Virginia

635.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage

to the Commonwealth of Virginia in the operation of its Medicaid program.

**636.**   Pursuant to the Virginia Fraud Against Taxpayers Act, the Commonwealth of Virginia and Relators are entitled to the following damages as against Defendant Novo Nordisk:

**637.**   To the COMMONWEALTH OF VIRGINIA:

    a.   Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant Novo Nordisk caused to be presented to the Commonwealth of Virginia;

    c.   Prejudgment interest; and

    d.   All costs incurred in bringing this action.

**638.**   To RELATORS:

    a.   The maximum amount allowed pursuant to Va. Code Ann. § 8.01-216.7 and /or any other applicable provision of law;

    b.   Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.   An award of reasonable attorneys' fees and costs; and

    d.   Such further relief as this court deems equitable and just.

<u>COUNT XL</u>

**(Washington False Claims Act, Washington Revised Code § 74 66-005 et seq. against Defendant Novo Nordisk)**

**639.**   Relators re-allege and incorporate the allegations above as if fully set forth herein  and further allege as follows.

142

640.    Additionally, Relators state that the course of conduct described in this Complaint was a nationwide practice of Defendant Novo Nordisk.  Defendant Novo Nordisk conducts business in the State of Washington.  Upon information and belief, Defendant Novo Nordisk's actions described herein occurred in the State of Washington as well.

641.    This is a qui tam action brought by Relators and the State of Washington to recover treble damages and civil penalties under the Washington False Claims Act, Washington Revised Code § 74 66-005 et seq.

642.    Washington Revised Code § 74 66-020 provides liability for any person who-

   a.    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

   b.    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

   c.    Conspires to commit one or more of the violations in this subsection.

643.    Defendant Novo Nordisk violated Washington Revised Code § 74 66-020 from at least 2011 to the present by engaging in the fraudulent and illegal practices described herein.

644.    Defendant Novo Nordisk furthermore violated Washington Revised Code § 74 66-020 and knowingly caused thousands of false claims to be made, used and presented to the State of Washington from at least 2011 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

645.    The State of Washington, by and through the State of Washington Medicaid program and other state health care programs, and unaware of Defendant Novo Nordisk's fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

**646.**    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Washington in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**647.**    Had the State of Washington known that Defendant Novo Nordisk was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendant Novo Nordisk's fraudulent and illegal practices.

**648.**    As a result of Defendant Novo Nordisk's violations of Washington Revised Code § 74 66-020 the State of Washington has been damaged in an amount far in excess of millions of dollars exclusive of interest.

**649.**    Relators have direct and independent knowledge of the allegations of this Complaint, and this action is brought pursuant to Washington Revised Code § 74 66-050 on behalf of Relators and the State of Washington.

**650.**    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Washington in the operation of its Medicaid program.

**651.**    Pursuant to the Washington False Claims Act, the State of Washington and Relators are entitled to the following damages as against Defendant Novo Nordisk:

**652.**    To the STATE OF WASHINGTON:

    a.    Three times the amount of actual damages which the State of Washington has sustained as a result of Defendant Novo Nordisk's fraudulent and illegal practices;

    b.    A civil penalty of not less than $5,500, and not more than $11,000 for each false

claim which Defendant Novo Nordisk caused to be presented to the State of Washington;

    c.  Prejudgment interest; and

    d.  All costs incurred in bringing this action.

653.  To RELATORS:

    a.  The maximum amount allowed pursuant to Washington Revised Code § 74 66-070 and /or any other applicable provision of law;

    b.  Reimbursement for reasonable expenses which Relators incurred in connection with this action;

    c.  An award of reasonable attorneys' fees and costs; and

    d.  Such further relief as this court deems equitable and just.

## REQUESTS FOR RELIEF

WHEREFORE, the Relator, on behalf of the UNITED STATES, demand that judgment be entered in its favor and against Defendants NOVO NORDISK, INC.; SARAH MCLEISH; TIM VANNAMAN; GUS TORRES; ILYA RACHMAN, MD; ILYA RACHMAN, MD, INC.; RACHMAN MEDICAL GROUP; MINAS KOCHUMIAN, MD; MINAS KOCHUMIAN, MD, A MEDICAL CORPORATION; ADVANCED HEALTH MEDIA, LLC; AHM; FIVE STAR PHARMACY; and FIVE STAR RX, INC., with judgment to be entered against Defendants for the amount of damages to the States' Medicaid Programs arising (a) from claims for Defendant's' respective specified drugs and (b) jointly and severally with such other Defendants for damages as set forth in each paragraph above and herein, as follows:

1.    On Count I (False Claims Act; Causing Presentation of False Claims) for triple the amount of the UNITED STATES' damages, plus civil penalties of the maximum amount

allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

2.      On Count II (False Claims Act; Causing False Statements to Be Used to Get False Claims Paid or Approved by The GOVERNMENT) for triple the amount of UNITED STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

3.      On Count III (False Claims Act; Causing False Statements to Be Used to Conceal an Obligation to Pay Money to The GOVERNMENT) for triple amount of the UNITED STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

4.      On Count IV (False Claims Act; Causing Presentation of False and Fraudulent Claims; Illegal Remuneration) for triple amount of the UNITED STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

5.      On Count V (False Claims Act; Causing A False Record or Statement to Be Made or Used to Get a False or Fraudulent Claim Paid or Approved by The Government; Prohibited Referrals, Claims, and Compensation Arrangements) for triple amount of the UNITED STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

6.      On Count VI (False Claims Act; Conspiring to Defraud the Government by Getting a False or Fraudulent Claim Allowed or Paid) for triple amount of the UNITED STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES.

146

Further, the Relators, on their behalf, request that they receive the maximum amount as permitted by the law, of the proceeds of this action or settlement of this action collected by the UNITED STATES, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Relators request that their award be based upon the total value recovered, both tangible and intangible, including any amounts received from individuals or entities not parties to this action.

## DEMAND FOR JURY TRIAL

Relators hereby demand a jury trial.

Dated:  June 14, 2018

Respectfully submitted,

**UNITED STATES OF AMERICA, ex rel.**

Relator

By: _____

Brian J. Markovitz, DC Bar No. 481517
Joseph, Greenwald & Laake, PA
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Telephone: (301) 220-2200
Facsimile: (301) 220-1214
bmarkovitz@jgllaw.com

Mychal Wilson (pro hac vice anticipated)
The Law Offices of Mychal Wilson
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Telephone: (424) 252-4232
Facsimile: (310) 424-7116
mychal@mychalwilsonesq.com

C. Brooks Cutter (pro hac vice anticipated)
John R. Parker, Jr. (pro hac vice anticipated)

147

CUTTER LAW PC
401 Watt Avenue
Sacramento, California 95864
Telephone:     (916) 448-9800
Facsimile:     (916) 669-4499
bcutter@kcrlegal.com / jparker@kcrlegal.com

*Attorneys for Relators Jason Gregory and Wilbur Ayers*

148